In the Matter of the Application of HENRY J. VAN AUKEN, Petitioner, for an Order of Mandamus against WALTER B. KIMMEY, as Superintendent of the Bureau of Building of the City of Syracuse; W. W. WIAND, as Commissioner of Public Safety of the City of Syracuse, and ROLLAND B. MARVIN, as Mayor of the City of Syracuse, Respondents.

Supreme Court, Onondaga County, July 27, 1931.

118

*Costello, Cooney & Fearon*, for the petitioner.

*Frank P. Malpass, Corporation Counsel*, for Walter B. Kimmey, as superintendent of the bureau of building; W. W. Wiand, as commissioner of public safety, and Rolland B. Marvin, as mayor of the city of Syracuse.

*Shapero & Markowitz*, for intervening respondents.

SMITH, E. N., J.  I find no reason to alter the views expressed in the memorandum made at the time of granting an alternative order of mandamus, in so far as those views were related to the effect of the provisions of the ordinance as to set-back lines.  (See, also, 141 Misc. 105.)  Reference is here made to that memorandum, which is made in so far a part hereof.  I will, however, emphasize the views therein expressed, to the effect that the power to establish so-called set-back lines, if any, does not arise out of the power to enact zoning ordinances.  " Zoning " means " districting," and the

establishing of set-back lines is no part of " zoning." The authority to establish " set-back lines'" finds its origin in subdivision 24 of section 20 of the General City Law (added by Laws of 1913, chap. 483, as amd. by Laws of 1925, chap. 394). This provision has been quoted in the memorandum heretofore filed herein. So far as municipal power exists to establish set-back lines, within the limits of constitutional provisions protecting the rights of private property, this power must be derived from the police power and be related to considerations of public health and public safety and general welfare. Section 20, subdivision 24, declares this base when it states: " Such regulations *shall be designed* to secure safety from fire and other dangers and to promote public health and welfare, including, so far as conditions may permit, provision for adequate light, air and convenience of access, and shall be made with reasonable regard to the character of buildings erected in each district, the value of land and the use to which it may be put, to the end that such regulations may promote public health, safety and welfare and the most desirable use for which the land of each district may be adapted and may tend to conserve the value of buildings and enhance the value of land throughout the city."

The courts went a long way in extending the application of the police power so as to include " zoning " within its scope. Conditions of life in cities rather compelled an extension of former concepts of the police power. The courts however, have been careful to limit the scope of zoning ordinances: they must be adopted, if to be sustained, in accordance with a well-considered and comprehensive plan, general in its application, and be largely based upon the proposition that upon proper application there would be no real damage caused to the individual property owner. Variances may be allowed in cases of undue hardship. Arbitrariness is overcome by the setting up of boards of appeal — excepting in Syracuse, N. Y., which has no such board.

The " set-back line " provisions, however, do not relate to the character of use to which property may be put. They have become necessary largely because of the growth in the height of buildings, the effect of which was to shut out light and air and to create an increase of fire hazards. The fact that they may operate to improve the appearance of a street from an aesthetic standpoint is an incident and not a purpose. The question is, in every effort to establish so-called " set-back lines," whether that effort is motivated by considerations of public health, of public safety, of general welfare. Side building lines and location of buildings in relation to the rear are quite as, if not more, important from these standpoints.

It is quite evident that the so-called " set-back line " provisions

of the ordinance of the city of Syracuse were not enacted with regard to these questions of public health, safety and general welfare, because no general rule can be adopted which operates alike in respect to health, safety and general welfare in a particular locality; nor do they follow the legislative authority. Widths of streets vary; heights of buildings vary; conditions of structures vary. The fact that one district may be classified as " A-Residential " and another district as " B-Residential " would not authorize the establishing of a twenty-foot set-back line in one instance and a ten-foot set-back line in another, based upon considerations of public health and safety or of subdivision 24 of section 20 of the General City Law. Moreover, the provisions are arbitrary, in that there is given no opportunity for variance or for review. In expressing the foregoing views the case of *Gorieb* v. *Fox* (274 U. S. 603) has not been overlooked. The views here expressed are not out of harmony with the opinion in that case, when properly read.

So that, if this were all there was involved in the instant case, there would be no hesitation in granting the order of mandamus. In other words, the views expressed in the memorandum already filed have not been altered but have been strengthened by further consideration of the subject. The peremptory order of mandamus was not granted because of the view expressed in that memorandum, as follows: " It remains to be considered whether or not, where a property has been used in part for business purposes prior to the establishment of the block in which it is located as a B-residential district, the structures may be enlarged after the establishment of the residential district so as to occupy more of the land for a then prohibited business purpose than was occupied by the original structure." It was to allow for an examination of this question, together with the further question as to whether in this particular instance such a hardship was being worked upon the petitioner that his constitutional rights to property had been invaded that the alternative order was granted.

At the time when the zoning ordinances went into effect in the city of Syracuse, the petitioner had the undisputed right to maintain his business in the buildings as they then existed. The question left open was whether or not the structure could be enlarged and the business extended, and as to what power there was in the city government, under the ordinances as they existed, in reference [to the situation which arises from the purpose of the petitioner to enlarge his buildings. There is no warrant in the facts of this case for the revocation of the permit granted by the superintendent of the bureau of building to the petitioner to enlarge his buildings, provided that at the time when the permit was granted he had the

power to grant it, because the conditions which under the provisions of the building code authorize the revocation of a permit once granted did not exist. So the inquiry here must be addressed to the question as to whether or not the superintendent of the bureau of building had the power in the first instance to grant the permit. The municipal authorities could have provided, by suitable ordinance, for a tolerance or variance in respect to the matter, so as to avoid unnecessary hardship upon an owner. The zoning ordinance of the city recognizes the right to continue a business in existence at the time when a district is changed in its classification from a business to a residential district; the business may continue, may develop, may increase, within the structures then in existence. As the business grows, and if it grows beyond the capacity of existing structures, may those then there be enlarged, and may more area be occupied by new buildings, in order to accommodate the increase; or does the changing of the district from business to residential end additional construction?

Three of the provisions of the zoning ordinance bearing upon this question have already been quoted in the memorandum made upon the granting of the alternative order of mandamus: They are Article V.4.2, Article V.4.3 and Article V-4. There is a fourth provision, which reads:

" Article 5.4.7. Conditional use. When in its judgment the public convenience and welfare will be substantially served or the appropriate use of neighboring property will not be substantially or permanently injured, the Planning, Parks and Recreation Commission may, with the approval of the Common Council, in a specific case, authorize a conditional use in a district wherein such use is prohibited. The conditions shall be specified in writing in the permit and shall in no way be construed as allowing the property any other use than the specific use for which the permit is issued."

These are the only provisions in the zoning ordinance which govern the question of variance, and have no relation to the questions which arise herein. If, therefore, as a matter of law, the power to extend a use at the time authorized by way of enlargement of building structures on additional area for a purpose prohibited within a residential district did not exist, then the permit issued was issued without authority and was void. What the petitioner proposes to do is to extend his business by way of new construction and the use and occupancy of it beyond the use of the property as it existed at the time of the establishment of the district in which the premises of the petitioner are located as a B-residential district. As has already been intimated, there should be provision for variance or tolerance in cases where undue hardship may be worked upon an individual by reason of the general operation of a rule,

and the action of the superintendent of buildings in such instances should be subject to review by a properly constituted board of appeal, to the end that arbitrary action or mere political influence inducing such action may not be controlling; yet here we have no provision for variance at all. So the superintendent of the bureau of buildings was of his own motion without power to grant the building permit in this particular instance, and its prompt revocation was a proper act. Its issuance was a nullity because without authority, and the petitioner was bound by the knowledge of that fact. The exercise of authority to grant such a permit without provisions limiting the conditions upon which it could be exercised, without opportunity to those interested to be heard, without review by a board of appeals properly constituted and by experience especially qualified to judge on the subject, would open the way for the defeating of the very purpose of the zoning ordinances. Subject to a reasonable application of the rule as related to particular circumstances and conditions, the establishment of a residential district pursuant to the provisions of the zoning ordinance at least preserves the *status quo* in such a district and tends to the gradual establishment in fact of the district as a residential district in its entirety. To allow enlargement of buildings for manufacturing purposes or for business purposes in such a district would defeat the very purpose for which a district was classified as a residential district. Therefore, the permit having been issued without authority, it was void and was properly revoked, and the order of mandamus must be denied.

The evidence in the case fails to disclose any set of circumstances from which the court could conclude that an undue hardship was being worked upon the petitioner by reason of the operation of the zoning ordinance. The petitioner is not being interfered with in the use and occupancy of his property as it existed at the time when the district was converted into a B-residential district. It may be that the mere erection of a canopy for the convenience of customers applying for a supply of gasoline or oil, as a protection to them from rain or sunshine, would not constitute an unreasonable extension of use. Of course upon the same foundation, upon compliance with the general provisions of the building code, it perhaps would not be a violation of the zoning ordinance to increase the height of the structure within the same area as the present structure upon the premises. Reasonable improvements would have to be tolerated, and undoubtedly they would not be met with objection. All the petitioner has here shown is, by an expert witness, that his property would be worth $3,500 more with the privilege of building his building out to the street line than it would be with the limitations placed upon it. If that were true, it would also be

true as to other property on the street. The restrictions of zoning ordinances become one of the burdens of citizenship which under the law as now constituted and upheld a citizen must endure, excepting in instances of undue hardship. There is nothing here to show the limitations upon business as operated by the petitioner which are caused by the refusal to grant this permit. A proceeding by mandamus is essentially one in law, and, while the line where law ends and equity and other considerations begin is not clearly marked, the better practice seems to be to confine this proceeding to legal considerations. Upon some other proper proceeding the petitioner here might be able to present a state of facts from which a court could infer that he was a sufferer from undue hardship; he has failed to do so here. The proceeding would be simplified if there were established a board of appeals before whom all parties interested might be heard, whose action, quasi-judicial, might be reviewed by certiorari.

The petition for an order of mandamus is denied.

Ordered accordingly.