Jack Stanislaw, J.
In this article 78 CPLR proceeding petitioner Soros brings up for review the decision of the Zoning Board of Appeals of the Village of Southampton, respondent, which denied her application for a variance.
The subject lot was purchased by petitioner in the Fall of 1963. It is within the “ O-l ” Residential District in the village, a two-acre minimum district. Although the lot is only about one acre in size it was purchased as a nonconforming parcel, held in separate ownership prior to the amendment or revision of the Village Zoning Ordinance effective January 10, 1958. After the Village Board of Architectural Review had modified Soros ’ plans for a residence they were approved. A building permit was issued and construction proceeded to some 90% of completion, at a cost of approximately $24,000. It has proceeded no further for respondent determined, after an investigation of sorts; that the permit had been issued mistakenly and was therefore of no validity. Soros had failed to apply to the Board of Appeals prior to building on the nonconforming parcel and so the permit was rendered ineffective ab initio. At first, respondent conditionally granted a variance, but it refused any change in the 11 O-l ” District 100-foot setback requirement. At this point the 90% worth of house was set back only 64 feet, movable the rest of the way back only at an estimated cost of $10,450.
Petitioner brought an article 78 proceeding as to this determination which Mr. Justice Farley dismissed as factually insufficient (April 19,1965). However, Soros was given permission either to amend her petition or to reapply for a variance. Choosing the latter alternative, Soros instituted a second variance proceeding on June 18, 1965. Meanwhile, the board had *207 appealed the decision. In August, 1965, the Appellate Division noted that, since petitioner had actually chosen to pursue one of the alternatives, respondent’s appeal was premature. The matter had been remitted as of the time Soros exercised the option provided, and the entire proceeding would now be heard and determined de novo. (Matter of Soros v. Board of Appeals of Vil. of Southampton, 24 A D 2d 705.)
The second variance application was heard on and off until November 30, 1965. Then, by the board’s decision, dated December 21, 1965, it was denied in toto, and that proceeding and determination is before us now.
Respondent found, in essence, that the separate ownership of this lot had merged, after enactment of the ordinance, with that of adjoining parcels so as to destroy its nonconforming status. The board found too, that considerations of the community’s welfare overrode any difficulties sustained by Soros occasioned by the improperly issued building permit and construction undertaken in reliance on it.
As Mr. Justice Farley noted, the building permit was properly revoked. This is not only the law of the case, it is apparently the law, period (Marcus v. Village of Mamaroneck, 283 N. Y. 325). On the other hand, the dismissal of the initial article 78 petition stands for nothing more than the inadequacy of that petition. The review here is of a totally new and distinct proceeding, running anew from the application made in June of 1965.
Two significant issues can be distilled here. At first, that relating to separate ownership must be resolved, for if there is none the board is powerless to vary with regard to the one parcel, in accordance with its decision. Assuming proper and effective separate ownership we then must turn to an examination of the propriety of respondents’ mandating the 100-foot setback. The decision of the board is ostensibly limited to a finding of a lack of separate ownership. However, the secondary question is viable by reason of the nature and content of the application, the substance of the hearings, and the considerable treatment of the issue on its individual merits by the board’s decision.
Title to this lot was unquestionably held separately by one of petitioner’s predecessors in title at the time of enactment of the ordinance. Later, a deed conveying title to the owner of two adjoining lots was executed, but not recorded until just before Soros took title to the one lot. It was found by the Board of Appeals that the unrecorded postordinance conveyance irrevocably merged the three affected plots, making the subsequent *208 conveyance to Soros inoperative as one of a single nonconforming lot. The theory is not unique, but we nevertheless have failed to discover a truly authoritative indorsement of it. Its superficial logic is at least questionable, for the fact remains that the lot actually was separately owned when the ordinance became effective. The existence of nonconforming lots following revision of the zoning map was anticipated and acknowledged to the extent that the new ordinance provided for them specifically. The Board of Appeals was empowered to act particularly so as to permit the erection of single-family dwellings, subject to certain considerations, on newly legislated substandard lots.
The ordinance did not refer at all to the possible merger of nonconforming parcels at some later date. Despite the reference to and description of lots owned separately at the time of enactment respondent has further and independently invoked a merger qualification. There is no indication in the ordinance whatsoever that any later common ownership could or would impair or divest recognized and accrued rights established (Matter of Feldman v. Commerdinger, 26 Misc 2d 221). It would have been simple enough for the trustees to have provided, otherwise (Matter of Fina Homes v. Beckel, 24 Misc 2d 823) We thus find no basis for respondent’s reliance on merger as; a valid reason for the denial of Soros’ application. The board had jurisdiction to act, and we can proceed now to examine its determination.
The Village Zoning Ordinance, as revised, is preceded by a lengthy preamble by the Board of Trustees. It recites the extensive revision and develops the nature of the comprehensive plan embodied in the new legislation. Sources, such as engineering surveys and public hearings, are noted and the findings and purposes of the trustees enunciated. At section 5(B) of article I the Board of Appeals is authorized to vary the terms of the ordinance “ subject to appropriate conditions and safeguards, consistently with the public health, safety and welfare and securing substantial justice ”, and in harmony with the general purpose and intent of the ordinance. At section 4(A) of article V the owner of a nonconforming plot is told that the revision “ shall not prohibit the erection of a one-family dwelling * * * subject, however, to such restrictions as may be imposed by the Board of Appeals ” consistent with the public welfare and as noted above. In this case, the board decided to impose the general area setback requirement. It was asked to reduce that minimum, but strictly speaking it imposed a restriction affirmatively.
*209 Petitioner gains nothing from the short and improper existence of her invalid building permit (Marcus v. Village of Mamaroneck, 283 N. Y. 325). It had to be revoked (Matter of Kaltenbach v. Board of Stds. & Appeals, 274 N. Y. 34), regardless of good faith on Soros’ part which is inoperative to validate the permit, vest any rights or immunize that created in reliance on it (Matter of Gruberg v. Henry, 5 Misc 2d 223; Pagnotta v. Roberts, 101 N. Y. S. 2d 836). On the other hand, we see no reason why the mere existence of the almost finished house be held against the petitioner on the proceeding for a variance. We find, and respondent does not do more than hint to the contrary, that petitioner did not purposefully look to present the board with a fait accompli so as to force or demand the varied setback (cf. Matter of Midgett v. Schermerhorn, 24 A D 2d 572). There is merely a rather unfortunate series of events here for the board to consider in reaching a decision (Matter of Badish v. O’Regan, 212 N. Y. S. 2d 632).
Respondent’s decision alludes to Soros’ misrepresentation or failure to disclose. Either characterization presumably relates to the supposed merger which we have already discarded as a prop for this determination. Neither the construction commenced under the revoked permit, setback only 64 feet rather than 100 feet, nor the manipulation of deeds following the effective date of the ordinance, operates to justify the denial of variance per se. As a result, the board’s action is stripped of its rationale except as it has been stated to be based upon demands of the public welfare.
Soros has specified the substantial completion of the building, sizable expenditures, and the disproportionate cost of moving the house 36 feet to comply. These are the practical difficulties offered to support the affirmative side of this proceeding (Matter of Village of Bronxville v. Francis, 1 A D 2d 236, affd. 1 N Y 2d 839; Siegel v. Lassiter, 6 A D 2d 879; Matter of Willits v. Schoepflin, 23 A D 2d 868). These manifestations of practical difficulty arise from Soros’ acts carried on without effective sanction and thus are incapable of vesting as rights (but cf. Matter of Friend v. Feriola, 35 Misc 2d 250, affd. 23 A D 2d 822), or even practical difficulties (Matter of Quaglio v. La Freneire, 203 N. Y. S. 2d 968; Balsam v. Jagger, 231 N. Y. S. 2d 450).
Notwithstanding these infirmities in Soros’ case it is impossible to ignore the fact that what has been done might nevertheless be ratified by a variance. The construction itself, started and continued by error, does not warrant denial of variance just for that. The board is concerned about being forced by the *210 ‘ ‘ fait accompli ’ ’ to act in a particular manner, y.et we do not think inaction can he so easily justified. In the final analysis, the decision must stand or fall .on respondent’s appreciation of the public welfare.
The board considered the question of public welfare at .considerable length. It found the village to be ■“ peculiarly a leading summer resort of the highest type ” .and the summer colony thusfl the bread and butter of the community in general ”, As a sort of fait accompli on a different level the preamble to the ordinance is noted as calling for the particular •“ .0-1 ” District mínimums because the nature .and character of the ar,e,a demanded them. All this has been expressed by the hoard as emphasizing the degree of involvement of the ‘ ‘ fundamental public welfare of the entire community” at stake here. Petitioner’s property, located in the -“finest residential district”, cannot be permitted to deviate (even 36 feet) from the minimum without seriously prejudicing the welfare ,of the public. N.o substantial departure can take place s.o as to :erode the comprehensive plan “so peculiarly linked with the Public Welfare.” Over and above these considerations, the one reduction here would go far to work similar reductions in nearby areas ye.t -to be developed. So, says the board, the community would eventually become different, downgraded. The hoard finds itself unable to exercise its -discretion in this matter so as to bring disaster to the community.
To state the board’s argument is to reveal its patent deficiency. In its broader aspect, we are told that the ordinance itself is so delicately perfect that there may be no departure from its terms without the simultaneous economic collapse .of the entire village. Yet the Board of Appeals was given jurisdiction, power, to vary the provisions .-of this sacred document. Despite the preamble then, we must conclude that the legislative body understood and provided for something less than absolutely strict -applicationof the mínimums therein without fear of chaos. It is difficult to visualize -Soros ’ setback as -destroying the community, this Summer, or-at some future date. Respondent .might just as well have found -that to grant the application would cause an earthquake or an epidemic.
'The denial -of the application by petitioner rests upon no reasonable or logical basis. Therefore, we find the board’s decision -to have been arbitrary. It is set aside, and the proceeding remitted for -the purpose of the ¡granting -of the application.