Daniel GK Albert, J.
Petitioners in this article 78 proceeding seek to annul a determination of the respondent which on September 28,1971, denied their application for a waiver of the provisions of a town zoning ordinance which prohibits the parking of automobiles in that minimum area of a plot required for the front yard thereof. Said ordinance, section Gr-19.0(f) of article 14 of the Building Zone Ordinance reads in pertinent part as follows: “No space for the parking of automobiles shall be installed or maintained on any plot in the minimum area required for the front yard of such plot, except when permitted by resolution of the Town Board on findings that the enforcement of this prohibition will cause the occupant of the plot undue hardship and is not required in the public interest.” Petitioners maintain that the determination of the Town Board was arbitrary and capricious, unsupported by substantial evidence and an abuse of discretion, and that this court should direct the Town Board to grant the waiver sought by petitioners. Despite the apparent complexity of the issues herein, including the multifaceted real estate transactions, the granting and cancellation of building permits, the granting of previous variances and the various oral representations made at one time or another by petitioners and respondent through their various officers, the actual issue presented to this court for determination is a simple one to state, vis., whether the determination by the Town Board, that enforcement of the parking-space ordinance is required because petitioners failed to show that such enforcement would cause “undue hardship” or that it was “not required in the public interest ”, is arbitrary or capricious, unsupported by substantial evidence, or is an abuse of discretion. While simple to comprehend, the issue is not nearly so simple to resolve.
*395 On October 7, 1970, petitioners* applied for a building permit in order to erect a five-story medical building on a plot of real estate located in Merrick, Ñ. Y., on the south side of Merrick Road between Fox Boulevard and Henry Street. (The nine shareholders in petitioner 2200 Merrick Road Realty Corp. are the nine medical doctors who plan to be the tenants in said medical building.) A building permit limited to the construction of the foundation only was granted by the Town of Hemp-stead on October 20,1970. Petitioners allege, and it is not denied by respondent, that at that time they were advised by the Building Department that its policy in regard to commercial buildings was to issue foundation permits only, for the reason that only zoning, setback parking, area of building, etc., were the initial concern and that the actual construction details were left for further consideration. Petitioners were assured that a final building permit would be issued and that they could proceed with construction. The foundation permit, as approved, showed available parking for 41 vehicles.
On February 2,1971, petitioners were advised that the foundation permit was canceled for failure to commence operations within 90 days of the date of issuance. Petitioners then met with the Commissioner of the Building Department, and were informed that the department was principally concerned with the question of adequate off-street parking space. It is conceded that following this meeting the Commissioner concluded that there was adequate parking space (one of the criteria for the issuance of the foundation permit), and he advised petitioners on March 4, 1971, in writing that 1 ‘ work authorized by permit No. 7003274 has not been abandoned, and that performance of such work as authorized by the subject permit may proceed ”. In reliance on the second specific approval of their foundation permit, especially insofar as it related to the adequacy of available parking space, petitioners entered into construction contracts, guaranteed a subcontract for steel which had to be specially fabricated, formed 2200 Merrick Road Realty Corp. and commenced the construction of the medical building.
On May 12, 1971 the Town of Hempstead issued and served a stop order halting construction by petitioners, and on May 25, 1971 the town instituted an injunction proceeding against petitioners which is decided herewith. Since that date petitioners have been stayed from proceeding with any construction. Petitioners cross-moved in that proceeding for summary judgment and that motion is also disposed of herein.
*396 Following the institution of the injunction proceeding, and on May 27, 1971,. representatives of petitioners met with the Town Attorney, his deputy and the Buildings Commissioner, and the town officials acknowledged that a mistake had been made by the Buildings Department when it authorized "petitioners on March 4, 1971 to proceed with construction as authorized by the foundation permit. The Buildings Department asserted that it had been in error when it approved the permit which called for only 41 parking spaces, and that the permit had been revoked upon the discovery that insufficient parking space was provided therein.
Despite this setback due to an administrative error of the Buildings Department, petitioners attempted to rectify the situation by acquiring additional parking space. They entered into a contract for the purchase of some nearby property with a 140-foot frontage on Merrick Road, bounded on the west by Henry Street (across from the medical building) and on the south by Jeffery Court, for a purchase price of $150,000. The contract is expressly conditioned upon the petitioners’ obtaining the zoning variance sought herein. It appears that for petitioners to comply with the town requirement for sufficient off-street parking, they would have to utilize the entire plot of land which they have conditionally purchased, including the minimum area required for the front yard of such plot. Hence they applied to the respondent Town Board for a waiver pursuant to section G — 19.0(f) of article 14 quoted at the outset of this memorandum, and that application was denied for the following stated reasons: (1) If there was any hardship it was.self-created; (2) petitioners erected the steel superstructure without a building permit; (3) the application was improperly addressed to the Town Board, and should have been directed to the Zoning Board of Appeals; and (4) there was “ no evidence to support the statements in the petition that modification of the setback requirements would have no adverse effect on any other properties or that the public interest would be served by granting the application. ’ ’
Respondent’s third reason, that the petitioners should have applied for the variance to the Zoning Board of Appeals, may be disposed of first. Section G-19.0(f) expressly provides for such determination to be made by the Town Board, the respondent herein. Furthermore, in his letter to petitioners of June 24, 1971, the Deputy Town Attorney advised them “ to write a letter, addressed to the Town Board of the Town of Hempstead, setting out the relief requested.” This is precisely the action *397 which petitioners then took, and the Town Board cannot now be heard to assert its lack of power to grant the waiver sought.
The two leading cases dealing with the issue of zoning variances based upon undue hardship are Matter of Otto v. Steinhilber (282 N. Y. 71), and Matter of Jayne Estates v. Raynor (22 N Y 2d 417). In the Otto case (p. 76), the Court of Appeals denied such a variance, and set down a rigid test which petitioners claim to have met: “ Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality. ’ ’
Assuming that the Otto test is applicable herein (and it should be, since that case interestingly enough also involved property situated on Merrick Road), this court is of the opinion that petitioners have met the requirements thereof, and that the respondent Town Board’s decision that there was no “ undue hardship ” is not supported by the evidence, is arbitrary and capricious, and must be annulled.
The hardship which petitioners concededly face is not “ self-created,” as respondent has found. Despite prior inquiries made as to the adequacy of the proposed parking space, the Buildings Department on March 4, 1971 authorized a continuation of construction, an act which directly and clearly implied that sufficient parking space was provided for by the foundation permit. The petitioners were entitled to rely on this approval of their proposed parking space. They went forward with the construction, not only of the foundation but also of the steel super-structure, on the express representations of the Building Department that a final building permit would be issued. Indeed, that is not even in issue. No question has been raised as to the compliance of the proposed structure with town ordinances, and such a five-story building is concededly permitted thereby. It is the foundation permit which, having been re-examined and approved, Avas later revoked because the toAvn had erred in determining the proper number of parking spaces required. While the toAvn incurs no sanction because of its mistake, it must surely recognize that it caused petitioners the type of “undue hardship ” contemplated by section Gr-19.0(f) and by the Court of Appeals in Otto v. Steinhilber (supra).
*398 The tone of that decision was tempered somewhat by the same court in its more recent decision in Matter of Jayne Estates v. Raynor (supra, p. 422) wherein the petitioner was attempting to develop a site in the Village of West Hampton Beach for apartment house construction. After much litigation, petitioner thought he had negotiated a settlement with the village. In reliance thereon, he expended considerable sums of money. Judge Keating, writing for a nearly unanimous court, pointed out that while one does not acquire vested rights in reliance on an invalid permit, a “ good faith test should be sufficient to deal with the problem ’ ’.
* ‘ One does not acquire vested rights where one builds in reliance on an invalid permit (Matter of B & G Constr. Corp. v. Board of Appeals of Vil. of Amityville, 309 N. Y. 730; Marcus v. Village of Mamaroneck, 283 N. Y. 325). But it is beyond the exigencies of the situation to say that the expenditures cannot be considered on an application for a variance where the property owner has acted in good faith and there is no reasonable basis to charge him with constructive notice. There is sound reason to distinguish the two situations. After the building permit has been declared invalid, the landowner should gain no vested rights principally because of the damage to the zoning plan and also because he might find it quite feasible to recover his expenditures by using the property for a permitted use. However, where he seeks a variance, he is, in effect, not only arguing that there is no way for him to recover his loss under existing zoning, but also that his proposed use will not be inconsistent with existing uses, and the danger to the existing zoning scheme will be minimized.
“ Thus, a strictly applied good faith test should be sufficient to deal with the problem. Such a test is implicit in prior decisions. (Matter of Sherman v. Gustafson, 22 N Y 2d 793; Matter of Hoffman v. Harris, 17 N Y 2d 138; Matter of Fina Homes v. Young, 7 N Y 2d 845; Matter of Chasanoff v. Silberstein, 6 N Y 2d 807; Matter of Clark v. Board of Zoning Appeals, 301 N. Y. 86; Matter of Badish v. O’Regan, 212 N. Y. S. 2d 632; but see Matter of Midgett v. Schermerhorn, 24 A D 2d 572.) ”
Herein the petitioners, in reliance on the scrutinized foundation permit, entered into construction contracts, ordered materials and committed themselves to expenditures in excess of $100,000. After the discovery that the building permit had been issued in error, petitioners attempted to comply fully with the zoning ordinances by the purchase of additional land for parking. It is the limited availability and size of the additional land which necessitated petitioners’ application for a zoning variance *399 so that the prescribed front yard area could be used for parking, and there is not a scintilla of evidence of any bad faith or ‘ ‘ self-created ’ ’ hardship on the part of the petitioners. Consequently, the Jayne Estates good faith test, strictly applied, has been met by petitioners herein.
But what of the other requirement of section G-19.0(f), that the Town Board find that “enforcement [of the prohibition against allowing parking in the minimum area for front yard] * * * is not required in the public interest”? The Town Board expressly found that there was no evidence to support petitioners ’ contention 11 that the public interest would be served by granting the application.” Aside from the obvious service to the public interest that a medical building housing nine doctors would provide, petitioners did not have to prove that the variance would serve or promote the public interest, but only that it would not conflict with the public interest, and no such conflict can be ascertained. On the basis of all the evidence submitted the Town Board should have found that enforcement of the zoning ordinance was not required in the public interest. The property in question is zoned for business, and it is conceded by respondent that business frontage in the general area of the subject plot does not comply with the minimum front yard setback requirements. Moreover, an examintaion of the survey of the property in question here clearly demonstrates that a granting of the variance will have no adverse effect on any other properties. It is surrounded on three sides by public streets and on the fourth by an existing commercial building. On the contrary, granting of the waiver of the setback requirements will permit the petitioners to comply fully with the off-street parking requirements of the Town of Hempstead, and since there are concededly many other properties in the area which do not comply with the front yard setback requirements, the public interest will in no way be adversely affected.
Accordingly, it is the decision of this court that the determination of the Town Board denying a variance or waiver to petitioners is not supported by substantial evidence, is arbitrary and capricious and an abuse of discretion, and must be annulled. The board will be directed to forthwith grant petitioners pursuant to section G-19.0(f) a waiver of the front yard setback requirements so that by the purchase of the subject premises petitioners will be able to fully comply with the town ordinances which mandate sufficient off-street parking.
In light of the foregoing decision, respondent’s prior application for injunctive relief is denied, as is petitioners ’ request for summary judgment.

 Since petitioners are united in interest they will be considered to have acted in concert at all times.