Leon D. Lazer, J.
To what degree has New York’s highly restrictive vested rights doctrine fallen victim to recent appellate determinations which apply principles of equitable estoppel to zoning litigation? The answer is a requisite to the determination of the issues raised at the trial of this action in which certain Southampton property owners seek not only the enjoinder of further construction of a partially completed motel but its demolition and removal. The defendant partnership has expended in excess of $148,000 for construction of the motel and contends that its rights to complete the two fully enclosed structures are beyond the reach of newly enacted prohibitory town legislation. The essential facts follow.
On April 13, 1970, while its property was zoned E Business District in which motels were a permitted use, one of defendant’s predecessors in title, Land and Petroleum Corp. ("Land”), was issued a building permit by the Building Inspector of the Town of Southampton for the construction of a 40-unit motel. After installing footings and foundations in May of 1970, Land suspended all further work. In April of 1972, while contemplating purchase of the property, one of defendant’s partners inquired of the building inspector whether the 1970 permit was still valid and subsisting. Despite the building inspector’s affirmative answer, the Southampton Town Board *1033 enacted a new zoning ordinance on May 2, 1972 placing the property in the R-40 Residence District, a classification which excluded motel uses. Nonetheless, on May 9, 1972 the defendant’s corporate nominee entered into a contract with Land’s successor for the purchase of the 2.838 acres of real property at a price of $70,000, reserving the right of cancellation should it ascertain that the building permit was no longer valid. One of the partners testified that he was then aware that changes in the zoning ordinance were under consideration and he revisited the building inspector to make further inquiry. The building inspector again assured him that the permit was not affected by the new ordinance. On May 15, 1972, defendant submitted to the building inspector modified building plans which increased the number of motel units from 40 to 52, the floor area from 14,000 square feet to 20,648 and the total length of the two buildings from 277 feet to 393 feet. Although the new ordinance became effective on May 21, 1972, it was not until June that the modified plans were approved. Title was conveyed to the defendant on June 14, 1972 and construction of the motel was promptly resumed. In July, the building inspector approved another modification of the plans further increasing the size of the proposed buildings. Construction continued until September 11, 1972 when it was halted in response to a stop order issued by the building inspector as a result of complaints to the town board by plaintiffs and others. By that time the defendants had expended $148,296 for the erection of the two structures which now exist on the premises. When the town refused to institute suit against the defendant to enjoin further construction, this action was instituted by the plaintiffs in October of 1972.
Plaintiffs’ three-pronged attack upon the legality of defendant’s building permit relies on theories of original invalidity, subsequent abandonment, and revocation by rezoning. The first contention is without merit. The building inspector’s interpretation of Land’s plans (as well as those of two other projects) as constituting motel and not apartment units is neither irrational nor unreasonable, although its correctness is not free from doubt. It is a cardinal principle of statutory construction that in case of doubt or ambiguity in the meaning of a law the practical construction that has been given to it by those charged with the duty of its enforcement takes on almost the force of judicial interpretation (Matter of Lezette v Board of Educ., 35 NY2d 272; see, also, Matter of West *1034 Irondequoit Teachers Assn. v Helsby, 35 NY2d 46; Matter of Howard v Wyman, 28 NY2d 434).
The abandonment argument likewise fails for it is based upon Land’s cessation of construction in May of 1970. Subdivision 2 of article XVIII of the 1970 ordinance provided for automatic expiration of a permit if actual construction was not commenced within 90 days or an extension obtained, but it is undisputed that the work was commenced within the statutory period. If, as claimed, the purpose of the statute was to mandate continuity in as well as commencement of, construction during any fixed time period, such a requirement could have been stated in the ordinance (Gulf Oil Corp. v Vogel, 50 NJ Super 324). The real issue for determination is whether the permit survived the 1972 rezoning and the events which followed it.
According to the defendant the building permit survived the 1972 rezoning under both the traditional vested rights rule and a new balance of equities concept which it claims flows from the holding in Matter of Lefrak Forest Hills Corp. v Galvin (40 AD2d 211, affd 32 NY2d 796, cert den 414 US 1004).
Under traditional analysis the issuance of a building permit alone does not confer any rights which survive a zoning change (Matter of Sibarco Stations v Town Bd. of Vestal, 24 NY2d 900) and indeed the permit itself is revoked by the change if no construction has been commenced or liabilities incurred (Rice v Van Vranken, 225 App Div 179, affd 255 NY 541). Expenditures made after a zoning amendment has become effective will not defeat it (see Matter of Claremont Gardens v Barker, 282 App Div 1069; Rice v Van Vranken, supra; Matter of Downey v Incorporated Vil. of Ardsley, 152 NYS2d 195, affd 3 AD2d 663; Town of Wheatland v Esso Std. Oil Co., 2 Misc 2d 784; Ann. 49 ALR3d 78). A vested right to complete a nonconforming building matures when substantial work is performed and obligations are assumed in good faith reliance on a permit legally issued (Matter of Sibarco Stations v Town Bd. of Vestal, supra; People ex rel. Ortenberg v Bales, 224 App Div 87, affd 250 NY 598). Basic to traditional vested rights jurisprudence is the tenet that there is no right to reliance upon an invalid building permit (Matter of Jayne Estates v Raynor, 22 NY2d 417; Matter of B & G Constr. Corp. v Board of Appeals of Vil. of Amityville, 309 NY 730; City of Buffalo v Roadway Tr. Co., 303 NY 453; Matter of Cortodd *1035 Homes v Misiakiewicz, 45 AD2d 1008; Matter of Bogart v Woodburn, 40 AD2d 888; Matter of Soros v Board of Appeals of Vil. of Southampton, 50 Misc 2d 205, affd 27 AD2d 705; Matter of Colonial Beacon Oil Co. v Finn, 245 App Div 459; Rollins v Armstrong, 226 App Div 687, affd 251 NY 349; Pagnotta v Roberts, 101 NYS2d 836; Inzerilli v Pitney, 30 NYS2d 129).
Application of the traditional rule to the instant facts limits the expenditures upon which defendant may rely to those made by Land in 1970; defendant’s own expenditures made after the effective date of the 1972 ordinance are irrelevant. Land’s 1970 construction costs of $3,150 for footing and foundation work and $3,345 for plans and surveys do not meet the substantiality test under the rule (see Matter of Andgar Assoc. v Board of Zoning Apps., 30 AD2d 672) which requires that the expenses must not only be substantial in and of themselves (see People v Miller, 304 NY 105; Poczatek v Zoning Bd. of Apps., 26 AD2d 556) but must be substantial in relation to the total cost of the project (see Town of Lloyd v Kart Wheelers Raceway, 28 AD2d 1015; Glenel Realty Corp. v Worthington, 4 AD2d 702, app dsmd 3 NY2d 924; Town of Hempstead v Lynne, 32 Misc 2d 312; cf. Matter of Miller v Dassler, 155 NYS2d 975) which here was estimated to be $600,000. If the expenses relied upon are for foundation work, it must be shown that the work represents a substantial part of the structure (Riverdale Community Planning Assn., v Crinnion, 133 NYS2d 706, affd 285 App Div 1047, app dsmd 1 NY2d 689). There is no rational method of concluding that defendant’s rights vested under traditional theory.
Defendant maintains, however, that it is entitled to a "balancing of the equities” because it relied on the conduct of the Southampton building inspector who not only extended his assurances of the continuing validity of the 1970 permit but acted upon those assurances by approving both the modification of plans upon which the permit was based after the enactment of the new zoning ordinance and the continuance of construction based upon those plans. The assurances, of course, were erroneous and the approval of plans which increased the size and intensified the use of the buildings constituted the grant of a variance (see Matter of Crossroads Recreation v Broz, 4 NY2d 39), a power which both the Legislature (Town Law, § 267) and the Town Board (section 5-50-301.01 of the 1972 zoning ordinance) delegated to the Board *1036 of Appeals. Under traditional analysis, reliance upon a variance granted by a building inspector who lacks the power to grant it confers no vested rights upon the property owner (Matter of Kaltenbach v Board of Stds. and Apps., 274 NY 34; Marcus v Village of Mamaroneck, 283 NY 325; Matter of Chatsworth 72nd St. Corp. v Foley, 29 AD2d 522; Matter of French v Incorporated Vil. of North Haven, 1 AD2d 788; Matter of Van Auken v Kimmey, 141 Misc 117), and the right to continue a nonconforming use does not include the right to extend or enlarge it in the absence of a variance (Chandler v Corbett, 274 App Div 1073; Towne v Sherk, 257 App Div 983, affd. 281 NY 686; Matter of Van Auken v Kimmey, supra).
It now appears that New York’s traditional vested rights rule is in a state of transition and that some of the venerable authorities basic to it may not have survived the holdings in Lefrak Forest Hills Corp. v Galvin (40 AD2d 211, supra), and Jim Davis Development Corp. v Town Bd. of Town of Brookhaven, (NYLJ, March 2, 1973, p 20, col 8, affd 42 AD2d 705.) In Lefrak, the plaintiff and its predecessor obtained seven successive extensions of a building permit for an apartment project which had become a prohibited use under a New York City zoning amendment. The extensions were granted under section 11-324 of the New York City 1960 Zoning Resolution which empowers the Board of Standards and Appeals (the "board”) to grant further extensions in appropriate cases where, inter alia, "substantial construction of foundations has been completed.” Expenditures and commitments for construction were not made until the period of the seventh extension, after which the board denied the owner’s application for an eighth on the ground that the requisite degree of construction had not been completed. In reversing the board and directing issuance of the eighth extension, the Appellate Division abjured reliance upon res judicata but grounded its holding upon the combined effects of the earlier extensions (all of which had been challenged and judicially sustained) and the expenditures and commitments which had been made based upon them. That the completion of the requisite work under the zoning resolution had not taken place is apparent from the failure of the Appellate Division to base its holding upon such completion and from examination of the appellate record. In finding that the owner’s rights to the permit had vested, the court declared that vested rights "sums up a judicial determination that the facts of the case render it inequitable that the *1037 State impede the individual from taking certain action” (Lefrak Forest Hills Corp. v Galvin 40 AD2d 211, 218 supra ) and that to ignore the prior extensions in considering those facts "would blind our eyes to the equities and rights upon which Lefrak * * * might justifiably depend in dealing with the property.” (Lefrak Forest Hills Corp. v Galvin, supra, pp 217-218.) In his dissent from the Lefrak affirmance (32 NY2d 796), Judge Jasen of the Court of Appeals concluded that the Appellate Division had engaged in the balancing of equities to achieve its result. The accuracy of Judge Jasen’s insight was quickly underscored by the Second Department’s unanimous affirmance of the holding in Jim Davis Development Corp. v Town Bd. of Town of Brookhaven (supra), a case in which it is quite apparent that the equities were balanced to achieve the result attained.
In Jim Davis Development Corp., the original building permits for the construction of two-family houses were issued in 1968 at the same time that the zoning ordinance was amended to prohibit the use. Nevertheless, the building inspector issued three successive renewals of these permits under a savings clause which provided for commencement of work within three months and completion within one year. Actually, no work was commenced by the owner until late in 1971 but thereafter $150,000 was expended before the permits were revoked by the town board. The revocations were in turn annulled by Special Term on the ground that the owner had vested its rights by proceeding on the basis of a "reasonable albeit erroneous” interpretation by the building inspector who it could not be said acted with complete lack of semblance of authority. Although the unanimous affirmance was without opinion, it cited Lefrak as its authority. While the Lefrak and Jim Davis Development Corp. holdings appear to undermine traditional dogma concerning reliance upon invalid permits, the rule was re-enunciated in traditional language by the Second Department a year later in Cortodd Homes v Misiakiewicz (45 AD2d 1008, supra) where it was held that reliance upon an invalid permit issued in violation of the General City Law and the local zoning ordinance constituted no warrant for the creation of vested rights. It is possible, however, to reconcile these seemingly contradictory holdings.
Lefrak and Jim Davis Development Corp. share a common dependence upon permits validly issued and repeatedly renewed over a lengthy period of time based upon the interpre *1038 tation of a savings clause by the issuing authority. Under such circumstances, to ignore the prior extensions in considering whether the owner was entitled to rely on the renewals "would blind * * * our eyes” to the equities and rights which might be justifiably depended upon in dealing with property (Lefrak, 40 AD2d 211, 217-218, supra). The obvious touchstone of Lefrak and Jim Davis Development Corp. is estoppel but the singularly gross error of the building inspector in Cortodd Homes precluded successful resort to that concept by the owner who was therefore doomed to an inevitable failure under the traditional vested rights rule. Examination of the rationale of each of the doctrines is requisite to any understanding of the distinction between them.
Although the vested rights and equitable estoppel doctrines have a similar inhibitory effect on governmental action when raised, their origins are quite different (see Heeter, Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes, 1971 Urban Law Annual 63). Vested rights is a constitutional doctrine (see Saltser & Weinsier v McGoldrick, 295 NY 499; People v Miller, 304 NY 105, supra) while the doctrine of equitable estoppel is preeminently the creature of equity (3 Pomeroy, Equity Jurisprudence [5th ed.], § 802). The doctrine of vested rights derives from the Fourteenth Amendment due process clause (Church v Church, 58 Misc 2d 753; Matter of Cohen v Starke, 269 App Div 256; 16 C.J.S., § 216) which involves that "fundamental fairness” which is essential to the very concept of justice (Kinsella v United States, 361 US 234; People v Leyra, 302 NY 353) and embodies the differing rules of "fair play” which through the years have become associated with different types of proceedings (Hannah v Larche, 363 US 420). Equitable estoppel is also grounded on considerations of "fairness” (see White v La Due & Fitch, 303 NY 122; Rothschild v Title Guar. & Trust Co., 204 NY 458; Robinson v City of New York, 24 AD2d 260; Áfatter of Adelman v Appleñeld, 22 Mise 2d 95) but there has always been a difference in the manner in which "fairness” is determined under the two doctrines. Estoppel, when asserted against a municipality, focuses on whether it would be inequitable to allow the government to repudiate its prior conduct, whereas vested rights relate to whether the owner has acquired real property rights which cannot be extinguished by governmental regulation. Those who rely on the defense of estoppel must demonstrate a change of position *1039 for the worse (3 Pomeroy, Equity Jurisprudence [5th ed.], § 804), while those asserting vested rights must show a substantial investment in preparation of property for a subsequently prohibited use (see e.g., Rice v Van Vranken, 225 App Div 179, supra). While courts often confuse the two principles, using the terminology interchangeably, the reluctance to hold that a government can be estopped while exercising its powers derives from the desire to avoid the unpleasant consequences that such estoppel could promote (Heeter, supra). The strength of the harsher vested rights doctrine is its dependence on relatively fixed criteria, while the more flexible estoppel doctrine is subject to the criticism that the greater the magnitude of the change of position, the less the color of authority required for the governmental act relied upon.
The majority of jurisdictions have adapted the principles of estoppel to zoning and many have evolved a theory of "zoning estoppel,” as a synthesis of the two traditional approaches, under which a local government exercising its zoning power will be estopped where a property owner relying in good faith upon some act or omission of the government has made such a substantial change in his position or incurred such extensive obligations and expenses that it would be inequitable and unjust to destroy the rights which he ostensibly had acquired (Heeter, supra). New York, however, has traditionally adhered to the concept of governmental immunity to estoppel on the rationale that since adoption of a zoning ordinance is a governmental function (Premium Bond Corp. v City of Long Beach, 249 App Div 756) a múnicipality cannot be estopped to assert governmental power as to acts within its governmental capacity (Gilliland v Lincoln-Alliance Bank & Trust Co., 145 Misc 827, mod. on othep grounds 239 App Div 68, affd 264 NY 517). Thus, it has traditionally been held in this State that a municipality cannot be estopped by the unauthorized or wrongful acts of its officers or agents (City of Yonkers v Rentways, 304 NY 499; Ziegler v City of New York 156 Misc 624, affd 248 App Div 873, affd 253 App Div 764; People ex rel. Sweet v Board of Supervisors, 101 App Div 327; Russell v Messina, 138 NYS2d 394; Wyler v Eckert, 73 NYS2d 789; Matter of S. B. Garage Corp. v Murdock, 185 Misc 55), or the failure of its officials to enforce the law (Village of North Pelham v Ohliger, 216 App Div 728, affd 245 NY 593).
Contrary to Mr. Justice Douglas’ observation that where there is a change in the law, the erosion of precedents is *1040 usually gradual and the overruling is simply a recognition of a fait accompli (Douglas, Stare Decisis, in 8th Ann. Benjamin N. Cardozo Lecture 22), the transition in New York law heralded by Lefrak was abrupt. Only Matter of Dubow v Ross (254 App Div 706) and Ward v City of New Rochelle (20 Misc 2d 122, affd 9 AD2d 911, mot for lv app den 7 NY2d 711) presaged current movement in the direction of recognition of equitable estoppel in zoning litigation. But Dubow’s rationale is retribution for governmental deception, not change of position, and while there is change of position in Ward, there is certainly an element of deception in the conduct of the Planning Commission there involved. More recently, the Court of Appeals (without citing Dubow) has held that where a municipal agency erroneously adopts a moratorium ordinance and thereby unlawfully prevents a landowner from acquiring vested rights the agency is estopped to deny that vested rights have been acquired (Matter of Temkin v Karagheuzoff, 34 NY2d 324, affg 43 AD2d 820). These New York estoppel cases offer little in the way of guidance as to the potential limits of the emerging rule. For direction in that regard it is necessary to look to the experience of the neighboring jurisdiction of New Jersey where zoning estoppel has a longer history (see e.g., Tremarco Corp. v Garzio, 32 NJ 448; Bonsall v Township of Mendham, 116 NJ Super 337, cert den 59 NJ 529). In New Jersey, an estoppel may be asserted against a municipality when a public official acting within the scope of his duty makes an erroneous but debatable determination and the property owner in good faith relies upon it, but there can be no estoppel where there is no authorization for the action taken (Hill v Board of Adjustment of Borough of Eatontown, 122 NJ Super 156). Thus, there can be no estoppel in reliance upon a building permit issued for a storage building in an A residence area (Kurowski v Board of Adjustment of City of Bayonne, 11 NJ Super 433) or for the extension of a nonconforming use where no variance has been obtained and there is thus no semblance of either compliance with or authorization in the ordinance (Weber v Pieretti, 72 NJ Super 184, affd 77 NJ Super 423).
In the instant case, the successive grants of use variances by the building inspector contrary to State or local law cannot constitute the basis for an estoppel. They did not result from a "reasonable albeit erroneous” interpretation of the ordinance but solely from an egregious usurpation of the powers of *1041 another governmental body. Had the defendant’s expenditures been made for construction in accordance with the original plans, it might be argued on the basis of Lefrak and Jim Davis Development Corp. that it had a right to rely on the building inspector’s mistaken impression that Land’s foundation work had vested the permit. There was no right, however, to rely upon the utterly void approvals of the defendant’s modified plans. Although there is here no issue of the building inspector’s honesty, the defendant fails because "There can be no 'vested rights’ under a void permit. To hold otherwise would be to put a premium on dishonesty of city officials charged with the duty of issuing such permits and would open the way for connivance and fraud. The will of the official would then be substituted for the mandate or the restrictions of the legislative enactment, and thus the limitation of zoning acts and ordinances held for naught.” (Ostrowsky v Newark, 102 NJ Eq 169.)
Despite its inability to establish an equitable estoppel in this forum, the defendant should not be precluded from seeking relief from the town which is not a party to this action and whose zoning board of appeals may choose to exercise its discretion to grant relief from the consequences of the building inspector’s errors. Good faith reliance upon an invalid permit can be considered by a board of appeals on an application for a variance (Matter of Cortodd Homes v Misiakiewicz, 45 AD2d 1008, supra; Matter of Jayne Estates v Raynor, 22 NY2d 417, supra; Matter of Badish v O’Regan, 212 NYS2d 632; cf. Matter of Midgett v Schermerhorn, 24 AD2d 572) where the expenditures are a factor in the determination of unnecessary hardship (Matter of Ullian v Town Bd. of Town of Hempstead, 68 Misc 2d 393, affd 38 AD2d 850). On such an application, the entire issue of notice (see Matter of Rosenbush v Keller, 247 App Div 748, affd. 271 NY 282) may undergo a scrutiny it has not received here because the result was otherwise arrived at.
The other defenses raised by the defendant are without merit. The plaintiffs have demonstrated that the value and enjoyment of their property have been diminished by virtue of defendant’s construction (cf. Marcus v Incorporated Vil. of Spring Valley, 24 AD2d 1021) and therefore they have standing to bring this suit (Daum v Meade, 35 AD2d 598). The allegation that plaintiffs are guilty of laches because construction was recommenced in June but this action was not initi *1042 ated until October has not been sustained by the proof. The plaintiffs were not bound to enjoin in advance the contemplated changes in the use of defendant’s property or forever lose their rights (Marcus v Village of Mamaroneck, supra) and there is every indication that they acted with expedition once the construction was started and the layout of the units became discernible (see City of Lansing v Dawley, 247 Mich 394). Furthermore, before instituting the action in October, plaintiffs first sought in July and August to induce the town to enforce the ordinance (Morris v Borough of Haledon, 24 NJ Super 171, 93 A2d 781; see, also, Mazzara v Town of Pittsford, 34 AD2d 90) and they did succeed in obtaining the September 11 stop order.
The complaint is sustained to the extent that an injunction against further construction will issue pending defendant’s application to the Southampton Zoning Board of Appeals for relief. Should no such relief be sought by application to that board within 30 days from service of the judgment to be entered hereon with notice of entry or should no relief be granted by that board, plaintiffs may apply on notice for final judgment for the full relief requested in the complaint. The bond previously filed by defendant to guarantee demolition is continued.