THE PEOPLE OF THE STATE OF NEW YORK ex rel. IRVING HAIM et al., as Surviving Directors of International Distributors, Inc., Petitioners, against ALGER B. CHAPMAN et al., Constituting the Tax Commission of the State of New York, Respondents.

Third Department, July 7, 1948.

*Bleakley, Platt, Gilchrist & Walker*, attorneys (*William F. Bleakley, Paul V. Wolfe* and *James D. Hopkins* of counsel), for petitioners.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Solicitor-General* and *Kent H. Brown, Assistant-Attorney General* of counsel), for respondents.

BREWSTER, J. This is a review under article 78 of the Civil Practice Act of respondents' determination which affirmed the assessment of a " cessation tax " (a franchise tax), imposed by former subdivision 3 of section 209 of article 9-A of the Tax Law — the assessment having been made against a domestic corporation, International Distributors, Inc., as a requirement for the approval of its dissolution, the petitioners being the surviving directors of said corporation which was dissolved after a protest payment of the aforesaid tax.

Relators attack the legality of the questioned tax as imposed upon their corporation because the statute which authorized it (L. 1944, ch. 415; Tax Law, § 209, former subd. 3), was enacted and made effective at a time when their corporation (hereinafter called International), was lawfully existing and had paid all franchise taxes theretofore imposed and due, the payment of which, prior to the aforesaid statute, had, by law, given sanction to the enjoyment of its franchise (its existence), for a future period subsequent to the effective date of the 1944 enactment. The argument is that this right to exist for the future period included also the right to cease to exist, or dissolve, during that time; that it had gained the right to dissolve during that future time by the full payment of all franchise taxes lawfully imposed and due under the statute which, by its very imposition of the taxes paid, gave the right of such future existence, including the correlative right of ceasing existence.

The conclusion is that, having under the prior statute thus gained the right to dissolve, it sought to do so when the right was effective, and that such right could not be lawfully cut

down or curtailed by the new (1944), imposition of the net income feature of the franchise tax as applicable to the period when, but for the new legislation, it could have dissolved free of it. This conclusion is based upon the premises that as to International's exercise of its right to dissolve, the imposition of the new tax (cessation tax), is unconstitutionally retroactive, violative of the Federal due process clause; that it afforded to this corporation no *locus poenitentiae,* and that its imposition constituted an unconstitutional abrogation of the contractual features of its chartered existence.

The view advocated by relators that we may say the Legislature did not intend the "cessation tax" to apply to those positioned as was International, is precluded by the plain and all inclusive language of the statute. With the exceptions specifically stated, the cessation tax was imposed " upon every domestic and foreign corporation ceasing to exercise its franchise ", etc.

As to the claim of the invalidity of the tax as applicable to International because of the retroactive feature and consequent denial of due process, the cited holdings in the gift tax cases are not controlling. In those cases the tax was imposed upon completed gifts — the tax therefore was wholly unforeseeable — could not reasonably have been anticipated — and so they were deemed invalid as " so arbitrary and oppressive as to be a denial of due process." (*Welch* v. *Henry,* 305 U. S. 134, 147; *Wilgard Realty Co.* v. *Commissioner of Internal Revenue,* 127 Fed. 2d 514; *Blodgett* v. *Holden,* 275 U. S. 142.) There is no such situation here. The tax here under protest was not a new tax. Only the time and circumstance which occasioned its becoming due and payable constituted the new arrangement. The very tax under review had been imposed by law as a franchise tax upon domestic business corporations for many years prior to and at the time of International's incorporation in 1942. It has continued to date. Prior to the 1944 enactments the time of its payment, as based upon net income, was so arranged that it was possible for such a corporation to enjoy its franchise for some two years and more by the payment of a small nominal tax and then, before the real incidence of the part based on net income, to dissolve and go tax free as to it. This tax free opportunity could then be kept open and continued by what in effect would be a reincorporation by those to whom the dissolved corporation had liquidated. This was made possible because a franchise tax for the privilege year was made payable in advance (nominal in amount when not based on net income), whereas the

further tax, as based on income, was computed upon the net income for a past calendar or fiscal year prior to the privilege year. In general, what the 1944 enactments did was to so arrange matters that ultimately the base year or fiscal period upon which the net income tax was computed, and the privilege period, would be the same.

The problem presented calls for a determination of the status of relator's corporation as regards the opportunity it had under the old statute to dissolve during its privilege year and thereby escape the incidence of the franchise tax on its net income which, otherwise, would have become payable. To what extent was such a tax free opportunity protected by constitutional guarantees? Of course, the mere abolishment of an opportunity to take measures to become free of a tax violates no rights. That, in substance, was all that the questioned statute did. In one sense the tax in issue had been assessed, i.e., imposed by law, prior to International's last privilege year and the 1944 enactment under attack merely changed to an earlier date the warrant for its collection. When International incorporated it had notice that if it had a net income such would be taxable, and that such tax would become payable after its privilege year of existence had been accorded to it by a nominal tax payment. True, it had a lawful chance to take steps whereby it could escape the further payment, viz.: by ceasing to exist during the privilege year and before the tax based on income became payable. But that opportunity to thus gain an almost tax free existence for two years was not within any constitutional protection. That the day might come when the time of payment would be changed and the door of opportunity to so escape be closed, was foreseeable — reasonably to be anticipated. Thus at the time of incorporation there was a *locus poenitentiae.* The achievement of corporate status and the acquirement of the privilege year by payment of the nominal tax did not give rise to any contractual rights which rendered International immune from a change in the time when and circumstances under which the tax based on net income would become payable. All that was done was to accelerate the time of payment should dissolution be decided upon, and thus close the door to the old opportunity to escape payment. This was within a valid exercise of the taxing power.

The determination should be confirmed.

HILL, P. J., HEFFERNAN, RUSSELL and DEYO, JJ., concur.

Determination confirmed, with $50 costs and disbursements. [See *post,* p. 855.]