NEWSDAY, INC., Respondent, v TOWN OF HUNTINGTON et al., Defendants, and HALF HOLLOW HILLS CENTRAL SCHOOL DISTRICT OF HUNTINGTON et al., Appellants.

Second Department, July 27, 1981

APPEARANCES OF COUNSEL

*Ingerman, Smith, Greenberg & Gross (Bernard C. Smith* of counsel), for appellants.

*Faruolo, Caputi & Weintraub (Frank J. Faruolo, Jr.* and *Gary N. Weintraub* of counsel), for respondent.

*Robert L. Beebe (Henry E. Wyluda* of counsel), for New York State Board of Equalization and Assessment, *amicus curiae.*

GIBBONS, J.

The resolution of the question presented here concerning the refusal of the Tax Assessor of the Town of Huntington to grant a tax exemption, pursuant to section 485-b of the Real Property Tax Law, entitled "Business investment exemption" (added L 1976, ch 278), must, at the outset, be approached by reference to the declared governmental purpose for the establishment of statutory tax exemptions as an incentive to stimulate business enterprises to invest their funds in the expansion of commercial, business and industrial facilities within the State and to thereby create new labor markets and improve its economy.

The State's policy in this effort is described in the memorandum of the State Executive Department (McKinney's Session Laws of NY, 1976, pp 2309-2310) as follows:

"Purpose of the bill

"To provide a real property tax incentive for the improvement of real property for commercial, business and industrial purposes.

"Summary of provisions of the bill

"The bill adds a new section to the Real Property Tax Law which will grant a real property tax exemption to the extent of 50 percent of the increase in assessed valuation attributable to construction, alteration, installation or improvement of such real property for specified industrial, business and commercial purposes.

"The exemption will be 50 percent for the first six years, 40 percent for the seventh year, 30 percent for the eighth year, 20 percent for the ninth year and 10 percent for the tenth year.

"The 10 year exemption shall cease in the event the property ceases to be used for eligible purposes.

"Any local government or school district is empowered to reduce the percentage of exemption allowed pursuant to this bill.

"The bill will take effect immediately and will be applicable to projects commenced subsequent to January 1, 1976 and completed subsequent to July 1, 1976.

"Statement in support of the bill

"This bill will provide the State of New York with another tool to encourage business development. It will encourage businessmen to improve obsolete facilities within the State. It will assist in reducing the competitive edge which other states presently have over New York State as a site for commercial, business or industrial expansion.

"Since the exemption relates only to the increase in assessed valuation, there is no loss of present tax revenues. Also, the exemption will not eliminate all increased revenue that would otherwise be available through increased assessed values. The bill, therefore, strikes a balance between the need to encourage development and the need for new local revenues.

"In order to eliminate the initial possibility of competition among units of local government within the State, the exemption is applicable originally statewide. However, the bill does contain a local option provision which counties, cities, towns, villages and school districts may exercise."

This statute became effective on June 8, 1976 and, in its early developmental stages, it was discovered that, under subdivision 7 as originally enacted, the power conferred upon local municipalities and school districts to reduce or eliminate tax exemptions was completely without restriction, and was so worded that the exercise of such local option could terminate a tax exemption which had already been granted. The counterproductive effect of this language was soon recognized to be a deterrent to future business investment and expansion by removing the incentive *after* the owner had invested money to improve business property in reliance upon such incentive.

This destructive fault was corrected in the following term of the Legislature when subdivision 7 was amended by chapter 397 of the Laws of 1977 (eff July 6, 1977) by adding the words "provided, however, that exemptions existing prior in time to passage of any such local law or resolution shall not be subject to any such reduction so effected."

In furtherance of the policy enunciated in section 485-b of the Real Property Tax Law, the appellant school district,

on November 22, 1976, adopted a resolution under which it indorsed the rationale of the section and gave full force and effect to this tax exemption enactment in the following language: "BE IT RESOLVED, that pursuant to Chapter 278 of the Laws of 1976, entitled 'An Act to amend the real property and tax law in relation to providing a partial exemption for certain business improvements outside the City of New York' the percentum of exemption for certain increases in assessed valuation for business, commercial and industrial real property authorized by the above described law, shall be that established by said law."

A consideration of the ensuing events, in chronological order, produces the following factual background upon which our determination must be made.

The respondent Newsday, a daily Long Island publication, acquired about 33 acres of land located in the Town of Huntington and within the boundaries of the appellant school district for the purpose of erecting a modern publishing plant at a cost of about $6,500,000. On November 10, 1977 the Town of Huntington issued a building permit and the construction of the new facility was then commenced.

In September of 1978 a representative of the respondent Newsday inquired of the Assessor of the Town of Huntington in relation to the filing of an application for tax exemption for the new plant and was advised by him that such application was to be filed with his office by June 1, 1979.

Construction of the plant continued; by April 9, 1979 it had been 90% completed, and on April 12, 1979 a temporary certificate of occupancy was issued to Newsday by the Town of Huntington.

However, on April 9, 1979, three days before the issuance of the temporary certificate of occupancy, the appellant school district, in an attempt to exercise its local option to change its prior policy, as expressed in its above-mentioned resolution of November 22, 1976, adopted the following resolution by which it reduced the tax exemption to zero: "RESOLVED that pursuant to Section 485B of the Real Property Tax Law the percentage of exemption is reduced to zero and be it further resolved that the aforementioned resolution of November 22, 1976 is hereby rescinded in total

as it applies to any Real Property constructed, altered or improved subsequent to this date, it being the intention of this Board to deny the Real Property tax exemption provided under Chapter 278 of the laws of 1976 to any Real Property constructed, altered, or improved *after* the date of this resolution. A copy of this resolution is to be delivered to the State Board of Equalization and Assessment and to the assessors of the Towns of Huntington and Babylon." (Emphasis added.)

A copy of this resolution was sent to the Tax Assessor of the Town of Huntington and to the New York State Board of Equalization and Assessment.

On May 10, 1979 respondent Newsday filed an application for tax exemption, pursuant to section 485-b of the Real Property Tax Law, with the Assessor of the Town of Huntington and mailed a copy to the State Board of Equalization and Assessment on May 31, 1979.

Thereafter, the assessor notified Newsday that its application was granted to the extent that it would have tax exemption with respect to town, county and special district taxes, *but not* with respect to school taxes because of the resolution adopted by the appellant school district on April 9, 1979, reducing the tax exemption to zero.

Notwithstanding that as a general rule of law a tax exemption statute, being in derogation of the sovereign's power to impose taxes, will be strictly construed against the taxpayer and any ambiguity or doubt will be resolved in favor of the sovereign *(Matter of City of Lackawanna v State Bd. of Equalization & Assessment of State of N. Y.,* 16 NY2d 222), and that, absent any countervailing circumstances, the right of a taxing authority to terminate a tax exemption remains completely unfettered and may not be challenged by the taxpayer, as, for example, where a tax exemption was terminated as to the grantee of hospital premises which had previously enjoyed tax exemption (see *Bronx Garment Center v City of New York, Dept. of Fin., Bur. of City Collections,* 199 Misc 513, affd 279 App Div 1048, mot for lv to app den 280 App Div 890), there are, nevertheless, certain equally important and concomitant principles of law which are also required to be con-

sidered and applied in dealing with the question of tax exemption in general, as the same is presented in this matter and, particularly, with respect to the construction of that part of subdivision 7 of section 485-b which confers the power of local option upon municipalities and school districts to withdraw from the granting of tax exemptions under this statute *and the manner of exercising such option* compatible with the purpose of the statute.

Concerning the rationale to be applied in interpreting a statute conferring a tax exemption, the Court of Appeals in *Matter of Association of Bar of City of N. Y. v Lewisohn* (34 NY2d 143, 153) held: "And while exemption statutes should be construed strictly against the taxpayer seeking the benefit of the exemption, *an interpretation so literal and narrow that it defeats the exemption's settled purpose is to be avoided. (People ex rel. Watchtower Bible & Tract Soc. v. Haring, 8 N Y 2d 350, 358.)*" (Emphasis added.)

The concept of legislatively created real estate tax exemptions finds itself in numerous portions of title 2 of article 4 of the Real Property Tax Law in addition to the subject section 485-b dealing with land used for commercial, business and industrial activity. To name but a few, it should be noted that section 421-a confers such benefit on new multiple dwellings; section 477 grants such tax benefits for the establishment of industrial waste treatment facilities; section 485-a provides land tax exemption for real property used for the manufacture of steel; and section 489 grants such exemption from taxes for the alteration and improvement of multiple dwellings to eliminate fire and health hazards. These various tax incentive statutes have assumed a very important role in fostering the economic growth of domestic trade and commerce and the improvement of housing facilities and other benefits for the inhabitants of this State.

The limited and constricted interpretation adopted by our dissenting colleague permits the resolution of the appellant school district made on April 9, 1979, reducing the percentage of tax exemption to zero, to do violence to the purpose of this statute.

In construing section J51-2.5 of the Administrative Code of the City of New York, which affords tax exemption and

abatement for expenses and costs of improving dwelling accommodations, the court, in *Matter of Martell's Rest. Corp. v Housing & Dev. Admin. of City of N. Y.* (64 Misc 2d 991, 992-993, affd 37 AD2d 691) held: "The intent of the statute was to induce landowners to improve their buildings and to create new much-needed units in existing buildings. To further this end, *the statute should be interpreted to encourage conversions rather than to circumscribe the activity with narrow, limited, strictly structured construction.*" (Emphasis added.)

The obvious purpose of the enactment of subdivision 7 of section 485-b of the Real Property Tax Law is to afford a local municipality or school district, as stated in *Matter of Association of Bar of City of N. Y. v Lewisohn* (34 NY2d 143, 155, *supra)*, the prerogative "to stem the erosion of municipal tax bases by permitting local governments to terminate exemptions", where the circumstances warranted such cutoff in the interest of its financial well-being.

However, implicit in the granting of such power by the Legislature, there was engrafted the concomitant precept *that it would be exercised in a reasonable manner* compatible with the statutory purpose, and not in such way as to so undermine the underlying purpose of the statute as to, for all practical purposes, deter others from seeking the tax incentive offered by the statute.

The Legislature did not create the power of local option under subdivision 7 or amend it by adding the above-mentioned safeguards to create an instrumentality for inequity.

When the appellant school district passed its first resolution of November 22, 1976, it adopted the concept of tax exemption afforded by section 485-b of the Real Property Tax Law and, by its action, it invited the respondent Newsday and perhaps others, to invest and make capital improvements for commercial, business and industrial growth within its borders and, to this extent, it joined in the hope that economic conditions of the State and the body politic would thereby benefit.

To now hold that, after almost $6,500,000 has been invested by Newsday in constructing this business facility over a period of one year and five months, the statute should

be construed so as to permit the passage of the April 9, 1979 resolution, reducing the tax exemption to zero, to foreclose the respondent from its right to apply for the tax benefit contemplated, would be to embark upon a rule of law which will not only frustrate this statute but may undermine the effectiveness of many of the similar tax exemption statutes which may be subject to termination by the exercise of the power of local option.

Prompted by its concern to stabilize existing tax exemptions, the Legislature, in 1977, amended subdivision 7 of section 485-b to provide protection for tax exemptions already conferred. This amendment represents a manifestation of its intent to encourage the improvement of real estate for business purposes and now furnishes an aid in the interpretation of how the statute should be construed in relation to the *manner* in which the local option to withdraw was intended to be exercised, and, particularly, with respect to those, as here, who, in good faith and in reliance on the continuance of such policy, had already made sizable expenditures to that end.

The only reasonable way by which the local option to decrease or terminate the tax exemption contemplated by section 485-b of the Real Property Tax Law may be exercised, in harmony with the statutory purpose, would be by a resolution or local law which provides for such result with respect to any construction, alteration or improvement to real property *commenced after* the effective date of such resolution or local law. The resolution of April 9, 1979 evinced an intent by the school district to "opt out" of the statutory tax exemption benefit *only* with respect to owners of "Real Property constructed, altered or improved *after* the date of this resolution" (emphasis added), and if construed to preclude the respondent's application for tax exemption herein, it would be legally ineffectual for the reason above noted. Having already commenced and substantially completed construction of its business facility prior to the resolution of April 9, 1979, the respondent Newsday was, at that time, eligible to apply for tax exemption under section 485-b. The temporal fact that the school district's resolution preceded the requisite filing of the application for tax

exemption does not, under the circumstances, provide a legal basis for the assessor to have rejected its application for school tax exemption particularly in view of the clear language of the resolution which provided for a curtailment of tax exemption benefits under the statute with reference only to real property improvements made "after" the date of this resolution.

Contrary to the assertion expressed in the dissent, the resolution of the issue here does not depend on an improper application of the doctrine of equitable estoppel to justify the granting of tax exemption in this matter, but, rather, such result obtains for the reason that the resolution of April 9, 1979, by its language, construed in a manner compatible with the legislative purpose of section 485-b of the Real Property Tax Law, limited its exclusion of tax exemption to a class of property owners who had "constructed, altered or improved" real property *after* its effective date, and not to those who had, as the respondent Newsday, commenced such construction operations *before* its effective date. Under the circumstances herein, the Assessor of the Town of Huntington, in the performance of his ministerial duty of passing upon the respondent's application for tax exemption, which was timely filed and otherwise sufficient, misconstrued the legal effect of the resolution of April 9, 1979 and improperly denied the application.

We note that appellants failed to assert before Special Term that the instant matter was improperly brought as a declaratory judgment action and instead should have been commenced pursuant to the provisions of article 7 of the Real Property Tax Law (see *Cablevision Systems Dev. Co. v Board of Assessors of County of Nassau,* 49 NY2d 866; *Sikora Realty Corp. v City of New York,* 262 NY 312, 317-318). Therefore, we do not pass upon the point or upon the possible use of CPLR 103 (subd [c]) to convert the action into its proper form. "Where * * * all parties to a litigation choose to do so, they may to a large extent chart their own procedural course through the courts *(Matter of Malloy,* 278 N. Y. 429)" *(Stevenson v News Syndicate Co.,* 302 NY 81, 87). It is noted that the matter was fully contested at Special Term and no objection was made to the procedure adopted.

Accordingly, the order herein should be affirmed, with $50 costs and disbursements.

TITONE, J. P. (dissenting). In my opinion neither my colleagues nor Special Term took sufficient cognizance of a crucial fact in this case, to wit, that Newsday did not comply in timely fashion with an essential statutory prerequisite to the granting of an exemption by the appellant school district. Specifically, section 485-b of the Real Property Tax Law sets forth the following requirements or conditions before an exemption may be secured thereunder:

"2. * * * (b) *No such exemption shall be granted unless*

"(1) such construction, alteration, installation or improvement was commenced subsequent to the first day of January, nineteen hundred seventy six; and

"(2) the cost of such construction, alteration, installation or improvement exceeds the sum of ten thousand dollars * * *

"3. *Such exemption shall be granted only upon application by the owner of such real property on a form prescribed by the state board.*" (Emphasis supplied.)

It is evident from the record that Newsday did comply with the first two prerequisites under section 485-b (subd 2, par [b]). However, it is likewise undisputed that although it had ample opportunity to do so, Newsday did not apply for an exemption prior to the school district exercising its statutory authority to "reduce the per centum of exemption otherwise allowed" (Real Property Tax Law, § 485-b, subd 7). One entitled to the benefit of an exemption must manifest his acceptance of the grant in order to obtain the benefits and, in particular, must comply *with all valid and reasonable conditions imposed by the statute* (84 CJS, Taxation, § 224; *First Unitarian Church of Los Angeles v County of Los Angeles*, 48 Cal 2d 419; *see Snapp v Neal*, 250 Miss 597). Where a statute granting an exemption conditions its enjoyment on the existence of certain facts, an exemption does not attach until the performance of such conditions. In determining what are the requirements of a conditional grant, the rule of strict construction against the grantee applies (84 CJS, Taxation, § 227).

The majority is correct when it asserts that, as originally

enacted, a local school district had unrestricted power under subdivision 7 of section 485-b to reduce or eliminate a *tax exemption that it had already granted;* and that to eliminate such an inequity, the Legislature, in 1977, amended subdivision 7 by adding the words "provided, however, that *exemptions existing prior in time to passage of any such local law or resolution* [reducing or *eliminating the exemption*] shall not be subject to any such reduction so effected." (L 1977, ch 397; emphasis supplied.) However, what the majority does not address or controvert is that the power, *inter alia,* of a school district to reduce the percentum of exemption under the law was not abrogated by the subject amendment. Simply stated, the amendment only prohibits the exercise of such power where an exemption is extant, or where previously there had been compliance with the statutory prerequisites. It did not proscribe the right of a municipality to "opt out" of the tax incentive program before an exemption under section 485-b vested. Where an amendment leaves portions of the original act unchanged, such portions are continued in effect with the same meaning and effect as they had before the amendment (McKinney's Cons Laws of NY, Book 1, Statutes, § 193; *Robinson v County of Broome,* 195 Misc 24, affd 276 App Div 69, affd 301 NY 524; 82 CJS, Statutes, § 384). The existing law is not presumed to be changed further than is necessarily implied from the language used in the amendatory act (McKinney's Cons Laws of NY, Book 1, Statutes, § 193; *Woollcott v Shubert,* 217 NY 212; *Rawn v 14 East 60th St. Hotel Corp.,* 126 Misc 247).

Contrary to the position taken by the majority, I attach no significance favorable to Newsday from the fact that in September, 1978 the Tax Assessor for the Town of Huntington, advised Newsday's representative, in response to the latter's inquiry, that an application for a tax exemption with respect to Newsday's new plant for the next taxable year had to be filed by June 1, 1979. (See Suffolk County Tax Act, § 5, L 1920, ch 311, as amd by L 1970, ch 107.) Such query and response simply related to the deadline for filing an application under section 485-b in order to qualify for an exemption commencing the next taxable year, as is evidenced by the following language contained in subdivi-

sion 3 of that section: "The original of such application shall be filed with the assessor of the city, town, village, or county having the power to assess property for taxation *on or before the appropriate taxable status date of such city, town, village or county.*" (Emphasis supplied.)

In alluding to the fact that the appellant school district passed a resolution on November 22, 1976 adopting, in principle, the policy enunciated in the subject exemption law, both the majority and Special Term seemingly attach to such action a significance favorable to respondent's cause. In my opinion such resolution was at most a statement of policy on the part of the membership of the appellant school district at that time. In no way should it be construed as inhibiting members of that body from "opting out" of such program at some future time under rights expressly granted to it pursuant to subdivision 7 of section 485-b. The mere abolition of an opportunity to take measures to become free of a tax pursuant to law, violates no rights (cf. *People ex rel. Haim v Chapman*, 274 App Div 132). Legislation re-adjusting rights and burdens is not unlawful because it upsets otherwise settled expectations *(Usery v Turner Elkhorn Min. Co.*, 428 US 1, 16).

Special Term declared that it made no finding on plaintiff's claim of equitable estoppel. The majority also asserts that the resolution of the issue herein does not depend upon an improper application of the doctrine of equitable estoppel. However, contrary to the position taken both by the majority and Special Term, it is evident that such theory controlled the latter's determination as reflected by the following excerpts taken from its opinion:

"The settled purpose of 485-b was to encourage business development in this state by providing tax exemptions to those who would build, expand or improve their industrial, business and commercial facilities.

"When this purpose was jeopardized by the local option provision of subd. 7 of the 1976 enactment, the legislature responded by an amendment which prohibited the dilution or elimination by local law or resolution of any existing exemption * * *

"And yet the defendant School Board urges such a hold-

ing upon this court. It would interpret the language of 485-b to mean that even if the construction were completed at considerable cost in excess of $10,000, the exemption could be denied by its unilateral action at any time before June 1 of that year, the taxable status date in the town of Huntington.

"The entrepreneur would enjoy no counter protective options * * *

"A major building project, such as we have here, which proceeds to construction involves considerable effort, expense and commitments which are not, as a practical matter, interruptible and certainly not reversible. An owner who proceeds at his own risk, would be hostage to one or more of the local taxing units who may care to respond to or anticipate political and populist demands for an expansion of the tax base."

In order to establish a right to equitable estoppel against a municipality, the allegedly aggrieved party must demonstrate (1) lack of knowledge *and the means of knowledge* of the truth as to the facts in question, (2) reliance upon the conduct of governmental personnel, and (3) action based thereon by the aggrieved of such a character as to change its position prejudicially *(Quaglia v Incorporated Vil. of Munsey Park,* 54 AD2d 434, 440, affd 44 NY2d 772). Succinctly put, the issue involved, as gleaned from Special Term's opinion and from the opinion of the majority, is whether it would be inequitable to permit the governmental body herein to repudiate its prior conduct *(Reichenbach v Windward at Southampton,* 80 Misc 2d 1031, affd 48 AD2d 909, mot for lv to app dsmd 38 NY2d 912).

With respect to the first criterion, i.e., lack of knowledge and of the means of obtaining the knowledge of the facts in question *(Quaglia v Incorporated Vil. of Munsey Park, supra),* it is axiomatic that Newsday is charged with the knowledge of the provision under subdivision 7 of section 485-b which permits a municipality and a school district to withdraw from the exemption program, with respect to those whose rights had not vested prior to such withdrawal.

As to the second criterion of equitable estoppel, i.e., reliance upon conduct of municipal officials, Newsday argues

that it came within its purview in that it relied upon the express invitation, as set forth in the resolution of November 22, 1976, to locate within the boundaries of the appellant school district. In effect, Newsday is asserting that such resolution was an assurance by the school district that the levels of exemption provided in section 485-b of the Real Property Tax Law would be maintained forever. However, the passage of the 1976 resolution did not prohibit the school district, as then composed or as constituted in the future, from exercising the statutory right to reduce partially or totally the percentum of exemption. A municipality as well as a school district, when acting on behalf of the State and the taxpayers affected, is charged with the statutory responsibility to determine the public need for the continuance of its grant of exemptions under the circumstances at any given time. Memberships of school districts and boards of education change constantly, as do the policies of such bodies, especially when additional economic demands are placed on them to provide quality education for those under their jurisdiction. The statutory freedom conferred by statute on the appellant school district to withdraw from the tax exempt program herein cannot be constrained by some prior, nonfinal and conditional determination, on any theory of equitable estoppel (cf. *Matter of Hamptons Hosp. & Med. Center v Moore*, 52 NY2d 88). Estoppel does not lie against the State, its municipalities or their agencies, where the governmental body was exercising its statutory or regulatory authority, notwithstanding any representation or opinion by any of the body's officers or employees *(Matter of Gavigan v McCoy*, 37 NY2d 548, 552). Rates and levels of taxation are the staples of each legislative session. Hence, a prior legislative body is powerless to bind its successors *(Matter of Roosevelt Raceway v Monaghan*, 9 NY2d 293). A resolution or proposition representing a change in thinking by a governmental entity with respect to a tax abatement or exemption may be the result of a recognized change in conditions or a recognition that the original proposed grant was excessive. In either event correction is permissible (cf. *Matter of London v Wagner*, 22 Misc 2d 360, 364).

Finally, in connection with the third criterion needed to

establish equitable estoppel, to wit, action taken by a party in reliance upon the conduct of a municipality, which prejudicially changes the position of such party, nowhere in Newsday's moving papers for summary judgment is there documentary evidence of an undisputed nature which demonstrates that in deciding to build its plant in the Town of Huntington, it relied on the school district's participation in the tax exemption program. At most the self-serving statements of Newsday on this issue in its pleadings raise a question of fact which would preclude the granting of summary judgment.

For the reasons set forth above, I believe the order of Special Term granting plaintiff summary judgment should be reversed and summary judgment granted appellants.

GULOTTA and MARGETT, JJ., concur with GIBBONS, J.; TITONE, J. P., dissents and votes to reverse the order, deny plaintiff's motion for summary judgment and grant summary judgment to appellants, with an opinion.

Order of the Supreme Court, Suffolk County, entered April 8, 1980, affirmed, with $50 costs and disbursements to plaintiff payable by appellants.