OPINION OF THE COURT
Joseph Jaspan, J.
Plaintiff moves for summary judgment in an action for declaratory judgment seeking an adjudication that in accordance with the provisions of section 485-b of the Real Property Tax Law (L 1976, ch 278) it is entitled to a partial tax exemption from school taxes on a $6,500,000 office and publishing facility constructed by it in Melville, New York, and for incidental relief related thereto.
Section 485-b provides that a qualified improvement is initially entitled to a tax exemption to the extent of 50% of the increase in assessed valuation attributable to construction, alteration, installation or improvement of real property for specified industrial business and commercial purposes. The authorized tax relief extends for 10 years during which there is a progressive reduction of 5% per year. It is applicable to projects commenced subsequent to January 1, 1976 and completed after July 1, 1976 as to which the cost of the improvement is in excess of $10,000.
The stated purpose of the bill was to encourage commercial, business or industrial expansion within the State of New York.
The Memorandum of the State Executive Department (McKinney’s Session Laws of NY, 1976, p 2310) contains the following comment: "Since the exemption relates only to the increase in assessed valuation, there is no loss of present tax revenues. Also, the exemption will not eliminate all increased revenue that would otherwise be available through increased assessed values. The bill, therefore, strikes a balance between the need to encourage development and the need for new local revenues. * * * the bill does contain a local option provision *408 which counties, cities, towns, villages and school districts may exercise.”
In the Opinion of the State Comptroller (34 Opns St Comp, No. 78-985, Dec. 14, 1978) the statute had automatic effect upon enactment and, while municipalities were not granted discretion as to whether they wished to implement the exemption or not, they were authorized by subdivision 7 of section 485-b of the Real Property Tax Law to reduce the per centum of the exemption or to eliminate it through local legislation.
Subdivision 7 provided that: "A county, city, town or village may, by local law, and a school district which levies school taxes may, by resolution, reduce the per centum of exemption otherwise allowed pursuant to this section. A copy of any such local law or resolution shall be filed with the state board.”
Counsel for the State Board of Equalization and Assessment (SBEA) (Opns of Counsel of St Bd of Equal & Assess No. 81, June 24, 1976) expressed his opinion that the reduction could be to zero but that each "municipal corporation in which eligible property is located would have to act by local law (or by resolution in case of school districts) to reduce the percentage of exemption.” It further noted that because the law did not become effective until June 8, 1976 it would not affect an assessment roll until the 1977 taxable status date, which in the Town of Huntington is June 1 of each year.
The local option to reduce the exemption (Real Property Tax Law, § 485-b, subd 7) was available at any time and prompted a memorandum from then Secretary of State Mario Cuomo to counsel to the Governor under date of June 4, 1976 in which he noted: "This could serve to substantially reduce the effectiveness of the measure because potential users of the exemption would have no assurance that once a facility was located or expanded, its exemption would not be reduced.”
On the same date counsel to SBEA also wrote to counsel for the Governor and stated that subdivision 7 would "authorize removal of the so-called incentive after an owner constructed business property in reliance upon such incentive.” (Emphasis supplied.)
At the next session of the Legislature, subdivision 7 of section 485-b of the Real Property Tax Law was amended (L 1977, ch 397, eff July 6, 1977) to meet the foregoing objection. It then and now provides: "A county, city, town or village may, by local law, and a school district which levies school taxes may, by resolution, reduce the per centum of exemption *409 otherwise allowed pursuant to this section; provided, however, that exemptions existing prior in time to passage of any such local law or resolution shall not be subject to any such reduction so effected. A copy of any such local law or resolution shall be filed with the state board.” (Emphasis added.)
The extent to which this amendment accomplished the desired result is tested by this action and the instant motion.
An examination of the pleadings, affidavits and the "Special Memo to the Court” from counsel for the Half Hollow Hills Central School District of Huntington and Babylon (School District) dated January 4, 1980 acknowledging threshold compliance compels the conclusion that there are no factual disputes between the parties and this court may decide the issues solely on principles of law.
No triable issue is raised by the dispute as to whether the School District was a taxing authority within the meaning of the statute. That is a question of law. Nor does the issue of whether the plaintiff would have in any event constructed the building merit a trial. It is not relevant to the determination herein.
FACTS
In the fall of 1976 and prior to the foregoing 1977 amendment to subdivision 7 of section 485-b of the Real Property Tax Law, representatives of the Huntington Township Chamber of Commerce met with William Atwood, the publisher of Newsday, to discuss the possibility that plaintiff would build its new facility in the Melville section of Huntington. At this meeting Atwood stated that he would want assurance that Newsday would receive the maximum tax exemption provided by section 485-b of the Real Property Tax Law. Thereafter, the chamber of commerce communicated with the Town of Huntington Supervisor and the Board of Education of the Half Hollow Hills School District to express Newsday’s views as to the real property tax exemption. The chamber was advised that the exemption would not be reduced as authorized by subdivision 7 of section 485-b and this assurance was conveyed to Newsday in October, 1976. (The "facts” set forth in this paragraph were extracted from an amicus curiae brief filed by the chamber of commerce and their recital is for background purposes only.)
In furtherance of that representation, the Half Hollow Hills *410 School Board on November 22, 1976 passed a resolution which provided that "the percentum of exemption for certain increases in assessed valuation for business, commercial and industrial real property authorized by [section 485-b of the Real Property Tax Law] shall be that established by said law.”
On March 31, 1977 Newsday acquired a 33-acre tract in the Melville area and on November 10, 1977 the Town of Huntington issued a building permit for the construction of the newspaper facility at an estimated cost of $6,519,860. Construction was commenced immediately thereafter.
It is noted again that the amendment to subdivision 7 became effective on July 6, 1977.
In September, 1978 Newsday communicated with Gregory Wujick, Assessor of the Town of Huntington, in order to ascertain the filing date for the tax exemption. In a letter dated September 22, 1978 Wujick enclosed application forms and advised that they were to be filed with his office "by June 1, 1979.”
However, on April 9, 1979 the Half Hollow Hills School Board passed a superseding resolution which provided in relevant part that "pursuant to Section 485 of the Real Property Tax Law, the percentage of exemption is reduced to zero and be it further resolved that the aforementioned resolution of November 22, 1976 is hereby rescinded in total as it applies to any Real Property constructed, altered or improved subsequent to this date, it being the intention of this Board to deny the Real Property tax exemption provided under [section 485-b] to any Real Property constructed, altered or improved after the date of this resolution.”
As of that date, the Newsday facility was more than 90% complete and three days later on April 12, 1979 a temporary certificate of occupancy was issued.
As the rescinding resolution had been passed prior to the formal filing of Newsday’s application on May 31, 1979 and prior to the taxable status date of June 1, 1979 upon which it could become effective, the assessor granted the exemption only as to town, county and special district taxes and denied it as to school taxes.
A subsequent request to the Board of Assessment Review for the exemption was denied on August 31, 1979 upon the grounds that the board lacked jurisdiction in the area.
In September, 1979 plaintiff commenced this action.
*411 ISSUES
Plaintiff urges that at the time of the resolution of April 9, 1979 purporting to reduce the exemption as to school taxes to zero, it already had a vested right to the exemption, since it met the qualifying standards as to the cost, type and timing of the construction and that the appropriate entry upon the tax rolls was only a ministerial act to be triggered by the timely filing of the appropriate application before the taxable status date. It notes that the language of the afore-mentioned resolution limits the reduction to prospective construction and raises the issue as to whether it, in any event, affects this project.
Plaintiff further argues that subdivision 7 of section 485-b of the Real Property Tax Law limits the power to reduce the exemption to "a school district which levies school taxes” and that the defendant Half Hollow does not so qualify. Further and in any event, the defendants should be estopped from denying plaintiff the benefit of the statutory exemption.
The defendant School District claims, however, that no such exemption can be effective before the filing of an application and the advent of the taxable status date and that the resolution of April 9, 1979 preceded both in this case and therefore was timely and effective; and that it does levy taxes and may enact the appropriate resolution; and that the doctrine of equitable estoppel does not apply to a governmental entity acting pursuant to a statutory power.
The Assessor of the Town of Huntington in paragraph 8 of its answer states that in denying the exemption as to school taxes he was performing a ministerial duty and only giving effect to the school resolution.
LAW
Statutes should be clear in language, absolute in purpose and predictable as to the result.
This is not always achieved and the courts are then called upon to interpret, define and fathom that important but sometimes elusive element of "legislative intent”.
Tax statutes are to be given a practical construction (Howitt v Street & Smith Pub., 276 NY 345) especially where the particular statute is intended to accomplish a practical economic result (Matter of Allied Chem. Corp. v Kowal, 9 AD2d 121, affd 8 NY2d 730; McKinney’s Cons Laws of NY, Book 1, Statutes, § 313).
*412 The literal meaning of the words is to be considered in construing such statutes. Such statutes should "not be given a wider scope or application than the words of the statute justify” nor should they be construed "so as to give it a narrower scope than the clear meaning of its words” (Matter of Consolidated Edison Co. of N. Y. v City of New York, 80 Misc 2d 1065, 1070, affd on opn below 57 AD2d 926, affd 44 NY2d 536).
Where there is doubt as to the construction of a statute imposing a tax, such doubt must be resolved in favor of the taxpayer and against the taxing authority (Matter of Airlift Int. v State Tax Comm., 52 AD2d 688; People ex rel. Mutual Trust Co. of Westchester County v Miller, 177 NY 51) and "should be interpreted as the ordinary person reading it would interpret it” (Howitt v Street & Smith Pub., supra, p 351; Matter of International Harvester Co. v State Tax Comm., 58 AD2d 125; Matter of Consolidated Edison Co. of N. Y. v City of New York, supra).
A somewhat different rule applies when the courts are asked to construe tax exemption statutes. Since such statutes are in derogation of the sovereign authority, they must be strictly construed (Matter of City of Lackawanna v State Bd. of Equalization & Assessment of State of N. Y., 16 NY2d 222; People ex rel. Blackburn v Barton, 63 App Div 581) and a heavy burden is placed upon the taxpayer to establish that it was the legislative intent to exempt the property from taxation (Matter of International Harvester Co. v State Tax Comm., supra). Moreover, if "ambiguity or uncertainty occurs, all doubt must be resolved against the exemption” (Matter of Lackawanna State Bd. of Equalization & Assessment of State of N. Y., supra, p 230; Matter of Niagara County Water Dist. v Board of Assessors of City of Lockport, 36 AD2d 236) and in favor of the sovereign (Matter of Airlift Int. v State Tax Comm., supra).
But an interpretation which is so literal and narrow as to defeat the settled purpose for the exemption is to be avoided (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143; Matter of Grace v New York State Tax Comm., 37 NY2d 193).
The settled purpose of section 485-b of the Real Property Tax Law was to encourage business development in this State by providing tax exemptions to those who would build, expand or improve their industrial, business and commercial facilities.
*413 When this purpose was jeopardized by the local option provision of subdivision 7 of the 1976 enactment (Real Property Tax Law, § 485-b), the Legislature responded by an amendment which prohibited the dilution or elimination by local law or resolution of any existing exemption.
That jeopardy was expressed in the Cuomo and SBEA correspondence to the Governor dated June 4, 1976, supra, as a loss of incentive if the exemption could be reduced or eliminated after an owner constructed business property in reliance upon the statute.
And yet the defendant school board urges such a holding upon this court. It would interpret the language of section 485-b to mean that even if the construction were completed at considerable cost in excess of $10,000, the exemption could be denied by its unilateral action at any time before June 1 of that year, the taxable status date in the Town of Huntington.
The entrepreneur would enjoy no counter-protective options. The threshold requirement that the project be advanced at a cost of at least $10,000 means, in accordance with an Informal Opinion of the Attorney-General dated September 7, 1978 (1978 Atty Gen [Inf Opns] 262), actual physical construction, alteration, installation or improvement and not the mere preparation of plans or the acquisition of permits and approval necessary to commence construction.
A major building project, such as we have here, which proceeds to construction involves considerable effort, expense and commitments which are not, as a practical matter, interruptible and certainly not reversible. An owner who proceeds at his own risk, would be hostage to one or more of the local taxing units who may care to respond to or anticipate political and populist demands for an expansion of the tax base.
No ambiguity exists in this case with respect to the substantive requirements and indeed proof that these criteria have been met is evidenced by the assessors’ action in granting the exemption on June 1, 1979 as to town, county and special district taxes, denying it only as to school taxes because of the resolution of April 9, 1979. Nor is it claimed that these criteria had not been met by that date. As noted, this $6,500,-000 project had progressed to the point that three days later on April 12, 1979, a temporary certificate of occupancy was issued.
If there is an ambiguity, it is to be found in the temporal *414 and procedural requirements of subdivisions 3 and 4 of section 485-b of the Real Property Tax Law which read as follows:
"3. Such exemption shall be granted only upon application by the owner of such real property on a form prescribed by the state board. The original of such application shall be filed with the assessor of the city, town, village, or county having the power to assess property for taxation on or before the appropriate taxable status date of such city, town, village or county. A copy thereof shall be filed with the state board.
”4. If the assessor is satisfied that the applicant is entitled to an exemption pursuant to this section, he shall approve the application and such real property shall thereafter be exempt from taxation, special ad valorem levies and service charges as herein provided commencing with the assessment roll prepared after the taxable status date referred to in subdivision three of this section. The assessed value of any exemption granted pursuant to this section shall be entered by the assessor on the portion of the assessment roll provided for property exempt from taxation.”
Subdivision 4 provides that the assessor "shall approve the application and such real property shall thereafter be exempt from taxation” if the criteria are met. (Italics supplied.)
In the absence of ameliorating or qualifying language or showing of another purpose, the word "shall” is deemed to be mandatory. (People v Ricken, 29 AD2d 192, affd no opn 27 NY2d 923.)
No such qualifying language is found in the statute under consideration and the State Comptroller has stated that business property which satisfies the statutory requirements of section 485-b must be granted the exemption and accordingly the assessor has no discretion in this matter (34 Opns St Comp, 1978, No. 78-985).
There was therefore no residue of discretion left with the assessor after the criteria had been met and he so acknowledged in his answer wherein he stated that "in denying the exemption, [he] was performing a ministerial duty.”
The taxable status date may have determined the effective date of the exemption (Real Property Tax Law, § 302) but not eligibility. If the plaintiff delayed filing a formal application until May 31, it was the result of the assessor’s September, 1978 response which stated that it need only be filed before June 1, 1979.
*415 It would thus appear that in accordance with the purpose, intent and language of the statute, plaintiff became entitled to the tax exemption prior to the adverse action by the school board even though the exempion could not be formalized until the actual filing of the formal application or noted as a fact until the advent of the taxable status date.
Any other interpretation would be so narrow and rigid as to defeat the stated purpose of the legislation.
It also appears that the resolution of the school board dated April 9, 1979 is consistent with that interpretation for by its very language it excluded only: "Real Property constructed, altered or improved subsequent to this date, it being the intention of this Board to deny the Real Property tax exemption provided under [section 485-b] to any real property constructed, altered or improved after the date of this resolution.”
It makes no direct or indirect reference to the filing or approval of the application or to the taxable status date. It related its action to construction only and reinforced its purpose by a statement of intention to deny a section 485-b tax exemption "to any property constructed, altered or improved after the date of this resolution.”
The School Board which by resolution of November 22, 1976 assured investors that it would honor the exemption established by law did not in April of 1979 withdraw that covenant as to property which had already been constructed or improved. Its argument now seems to be purely opportunistic.
If this court were to adopt the view that on April 9, 1979 plaintiff’s right to an exemption had not matured and was vulnerable to a local option withdrawal, it would nevertheless have to reach the conclusion that the resolution was not coextensive with the statute (Real Property Tax Law, § 485-b, subd 7) and must fail. The school board could not create a new class of taxpayers. It either lived with or escaped from the tax benefits of section 485-b.
Its resolution which was not by its language made applicable to all parties who had not yet been granted the exemption failed to properly and effectively achieve that result.
For the reasons set forth herein, this court concludes and adjudges that plaintiff’s property at Melville, New York, was exempt from taxation effective June 1, 1979 to the extent permitted by section 485-b of the Real Property Tax Law and *416 that exemption had not been previously terminated by any effective action by the School Board. Plaintiff 'is also entitled to judgment:
Directing that said exemption be reflected and entered upon the tax roll.
Directing a refund be paid to plaintiff for any taxes or additional taxes paid by plaintiff by reason of the failure and refusal to afford plaintiff the exemption mandated by section 485-b of the Real Property Tax Law.
As a postscript the court notes that it is not persuaded by the arguments of plaintiff and amicus curiae that the School District is not one which levies taxes and is therefore incapable of exercising the local option afforded by subdivision 7. But that issue is mooted by the foregoing opinion.
Further, no finding is made with respect to plaintiff’s claim that the School District and the assessor are equitably estopped from denying the exemption. Estoppel may be asserted against a municipality where it would be inequitable to allow the government to repudiate its prior conduct (Reichenbach v Windward at Southampton, 80 Misc 2d 1031, affd 48 AD2d 909, opp dsmd 38 NY2d 912). However, proof that plaintiff would not have acted except in reliance upon the representations of the School Board presents a triable issue which cannot be determined on this motion for summary judgment.