In the Matter of GEORGE W. WALKER et al., Respondents-Appellants, v BOARD OF ASSESSORS OF THE COUNTY OF NASSAU, Appellant-Respondent.

Second Department, October 29, 1984

APPEARANCES OF COUNSEL

*Edward G. McCabe, County Attorney* (*Joshua A. Elkin* of counsel), for appellant-respondent.

*Cullen & Dykman* (*Peter J. Mastaglio* of counsel), for respondents-appellants.

*Koeppel Sommer & Martone, P. C.* (*Adolph Koeppel, Saul R. Fenchel* and *Donald F. Leistman* of counsel), for certain real property owners, *amici curiae*.

### OPINION OF THE COURT

THOMPSON, J. P.

Section 485-b of the Real Property Tax Law, enacted in 1976, created the availability of a declining 10-year tax exemption for real property "constructed, altered, installed or improved * * * for the purposes of commercial, business or industrial activity" (subd 1). Pursuant to the statutory scheme, in the first year qualified property is exempt to the extent of 50% of the increase in assessed value thereof attributable to the construction or improvement. The exemption is thereafter reduced by 5% in each of the succeeding 9 years of the 10-year period (Real Property Tax Law,

§ 485-b, subd 2, par [a]). Subdivision 7 of section 485-b authorizes certain taxing authorities to opt out of the tax exemption scheme. The subdivision provides: "7. A county, city, town or village may, by local law, *and a school district which levies school taxes may, by resolution, reduce the per centum of exemption otherwise allowed* pursuant to this section; provided, however, that exemptions existing prior in time to passage of any such local law or resolution shall not be subject to any such reduction so effected. A copy of any such local law or resolution shall be filed with the state board" (emphasis supplied).

■ The primary issue presented by this appeal is whether school districts located in Nassau County "levy" school taxes for purposes of section 485-b, thereby entitling them to exercise the opting out provision of subdivision 7 of that section. Based upon an analysis of the legislative history, case law, and administrative opinions dealing with section 485-b, we conclude that school districts located in Nassau County "levy" taxes within the meaning of subdivision 7 of section 485-b. They are therefore authorized to exercise the option of reducing the business investment exemption provided for in that section.

### FACTUAL BACKGROUND

Between September, 1976 and April, 1977, each of the seven petitioning Nassau County school districts adopted resolutions which either reduced or eliminated the school tax exemptions provided for in section 485-b of the Real Property Tax Law with respect to certain properties located within those districts. Each of these resolutions was duly filed with the State Board of Equalization and Assessment as required by subdivision 7 of section 485-b of the Real Property Tax Law. Although the Nassau County Board of Assessors (the Board) was also served with copies of the districts' resolutions, the Board failed to conform the tax assessment rolls to the resolutions by eliminating or reducing the school tax exemptions for the specified properties.

In June, 1982, the petitioning school districts, joined by various real property owners within those districts, instituted this CPLR article 78 proceeding seeking the following:

(1) to compel the Board to cancel for school tax purposes the tax exemptions granted pursuant to section 485-b of the Real Property Tax Law for the properties described in the petitioning school districts' resolutions;

(2) to compel the Board to correct the tax assessment rolls for the school years subsequent to 1976/1977 to reflect the elimination of those tax exemptions; and

(3) to prohibit the Board from entering on any future assessment roll of property situated within the petitioning school districts, any tax exemption under section 485-b of the Real Property Tax Law unless the petitioning school districts repeal or modify the resolutions previously filed with the State Board of Equalization and Assessment.

In its verified answer to the petition the Board, in addition to general denials, asserted four affirmative defenses. The first affirmative defense denied the applicability of the withdrawal option provision of subdivision 7 of section 485-b of the Real Property Tax Law to the petitioning school districts. The Board took the position that pursuant to the Nassau County Administrative Code, local school districts do not "levy" taxes and are thus not empowered to act pursuant to the opt out provision of subdivision 7 of section 485-b. The Board's remaining affirmative defenses raised the defense of laches and alleged the expiration of the four-month Statute of Limitations under CPLR 217.

By written stipulation dated December, 1982, the parties herein agreed that all of the factual allegations contained in the petition, with the exception of a reference to certain parcels of property, were deemed admitted, and that in view of the stipulation, summary judgment treatment of the issues raised was appropriate. By memorandum decision dated March 28, 1983, Special Term found that the petitioning school districts "levy" taxes within the meaning of subdivision 7 of section 485-b of the Real Property Tax Law, and that they had the authority to opt out of the tax exemption scheme (118 Misc 2d 467). In reaching its conclusion, Special Term noted that under the Nassau County Administrative Code the mode of levying school district taxes is a multistep process in which the county, through its Board of Assessors and Board of Supervisors,

exercises purely ministerial functions, whereas the local school districts are vested with the discretion of determining the amount of taxes to be raised within the district. In addition, Special Term analyzed the legislative intent behind section 485-b of the Real Property Tax Law and concluded that the Legislature did not intend to penalize school districts in Nassau County by precluding them from the same opt out rights as those of other school districts throughout New York State.

### NASSAU COUNTY ADMINISTRATIVE CODE

Chapter VI of the Nassau County Administrative Code (NCAC; L 1939, ch 272, as amd) sets forth the scheme used for the levying of school district taxes in the county. Pursuant to the NCAC the Board of Assessors is required to prepare separate tax assessment rolls for the properties located in the various school districts within the county, and to deliver the verified rolls to the respective school districts on or before August 1 of each year (NCAC, §§ 6-18.0, 6-19.0). Upon receipt of its verified assessment roll, each school district must adopt its budget and fix the amount of school taxes to be raised in order to meet the budget (NCAC, § 6-20.0). Prior to 1982, the districts were also required to determine the tax rate to be imposed per every $100 of assessed valuation, and to certify the rate together with its budget to the Board of Assessors (NCAC, § 6-20.0). Section 6-20.0 was amended in 1982 (Local Laws, 1982, No. 6) by transferring the responsibility of fixing the tax rate from the school districts to the Board of Assessors.

After the school district budget and the amount of total school taxes to be raised has been certified to the Board of Assessors by a school district, the Board of Assessors is responsible for extending the taxes on the assessment roll (NCAC, § 6-21.0). Once the school taxes have been extended, the Board of Assessors certifies to the Nassau County Board of Supervisors that the taxes have been extended and submits those portions of the school district assessment rolls to which the warrants for the collection of the taxes are to be annexed (NCAC, § 6-22.0). The Board of Supervisors is thereafter required to "levy" the taxes so extended for such school tax purposes (NCAC, § 6-22.0).

The warrants, which command the town receivers of taxes to collect the taxes, are annexed by the clerk of the Board of Supervisors, signed by the Nassau County Executive and sealed with the county seal (NCAC, § 5-11.0).

DISCUSSION

The term "levy", when used in reference to taxation, has various meanings. Depending on the context in which it is used, the term may mean (1) the legislative function and declaration of the subject and rate or amount of taxation; (2) the fixing of the rate of taxation rather than the physical act of applying the tax rate to the property; (3) the ministerial function of assessing, listing and extending taxes; or (4) the doing of whatever is necessary in order to authorize the collector to collect the tax (see Black's Law Dictionary [5th ed], p 816, and cases cited therein). The Board, relying upon *People ex rel. Oswego Falls Corp. v Foster* (251 App Div 65, affd 278 NY 494), which involved an interpretation of the term "levy" as used within the context of former section 296 of the Tax Law, argues that because the school districts located in Nassau County are not responsible for the extension of taxes against the taxable property or for the annexation of warrants for the collection of those taxes, the petitioning school districts do not "levy" taxes within the meaning of subdivision 7 of section 485-b of the Real Property Tax Law. While an initial reading of *People ex rel. Oswego Falls Corp. v Foster* (*supra*) does appear to support such a conclusion, we find that the legislative intent behind section 485-b of the Real Property Tax Law, as well as the administrative and judicial authority interpreting the section, compel us to reach a contrary conclusion.

The primary consideration of the courts in construing a statute is to ascertain and give effect to the intention of the Legislature (McKinney's Cons Laws of NY, Book 1, Statutes, § 92). In cases where the statutory language is ambiguous, extrinsic evidence which sheds light on the legislative intent may be considered by the court (McKinney's Cons Laws of NY, Book 1, Statutes, § 120). The available extrinsic evidence concerning the legislative intent behind section 485-b of the Real Property Tax Law indicates that

the supporters of the bill intended that all fiscally independent school districts throughout the State deriving revenues from real property taxation be included within subdivision 7 of that section. The State Executive Department, in recommending the signing of this bill by the Governor, noted "[a]ny local government or school district is empowered to reduce the percentage of exemption allowed pursuant to this bill". It noted further "the bill does contain a local option provision which counties, cities, towns, villages and school districts may exercise" (Memorandum of State Executive Department, McKinney's Session Laws of NY, 1976, pp 2309, 2310). The New York State Economic Development Board, which also recommended enactment of the bill, in a memorandum dated June 3, 1976, similarly stated that under the bill "[a]ny local government or school district is empowered to reduce the percentage of exemption allowed in this bill". Although subdivision 7 of section 485-b of the Real Property Tax Law limits the availability of the tax exemption withdrawal option to those school districts which "levy" taxes, it appears that in the use of this language the Legislature merely intended to draw a distinction between fiscally independent school districts such as those located in Nassau County which directly participate in the tax levying process, and fiscally dependent school districts such as that located in New York City which are not involved in the tax levying process and do not derive their revenues directly from real property taxation.

We conclude that the term "levy", as used in subdivision 7, should not be so narrowly interpreted as to refer to the purely ministerial acts of extending the taxes against the taxable property and annexing warrants for the collection thereof (see *People ex rel. Oswego Falls Corp. v Foster*, *supra*), but rather should be interpreted broadly to encompass the legislative function of setting tax policy and/or determining the amount of taxes to be raised. In Nassau County it is the school districts which are vested with the authority to determine the amount of school taxes to be raised within the districts. The officials of each district reach this determination by considering the unique geographical and social characteristics of the district, as well

as its budgetary needs. Accordingly, it is logical that Nassau County school districts, as separate taxing entities, should be given the ultimate authority to determine whether a partial school tax exemption will be made available to improved industrial, business or commercial properties within its district.[*]

Our conclusion is consistent with that reached by the State Board of Equalization and Assessment (SBEA) in a 1979 opinion wherein it concluded that school districts located in Nassau, Suffolk and Westchester Counties "levy" taxes for purposes of the tax exemption withdrawal option of subdivision 7 of section 485-b of the Real Property Tax Law (6 Opns of Counsel of St Bd of Equal & Assess No. 85, pp 179, 181-182). In its opinion, the SBEA stated:

"In relation to the school districts in the three counties mentioned above [Nassau, Suffolk and Westchester], the annexation of the warrant is a ministerial act done after a specified state of facts are presented to the county or town, which does not exercise judgment or discretion. The budgetary determinations, including the monetary amounts to be raised by real property taxation, are made solely by the school district authorities. Moreover, in both Suffolk and Westchester the applicable provisions of local law impliedly confer the power to levy on the school districts (SCTA, § 8; WCAC, § 540). The basically parallel provisions of the Nassau County Administrative Code produce the same initial sequence of events. However, as noted above, the Nassau Code provisions alter the basic procedures by providing for extension of school taxes by the board of assessors (NCAC, § 6-21.0) and 'levy' of school taxes by the board of supervisors (NCAC, § 6-22.0).

"In the face of these somewhat ambiguous (and anomalous in the case of Nassau County) provisions, we have reviewed the legislative history of section 485-b * * *

"Clearly, the intention of the Legislature was to authorize the option to all fiscally independent school districts

---

[*] We note that at oral argument of this appeal counsel for the Board was unable to refer this court to any school district within the State which exercises more power or control over the school tax levying process than those school districts located in Nassau County. If we were to hold, as the Board urges herein, that school districts in Nassau County do not "levy" taxes for purposes of subdivision 7 of section 485-b of the Real Property Tax Law, the statutory tax exemption withdrawal scheme of subdivision 7, as it relates to school districts, might have no applicability at all.

and exclude only those fiscally dependent city school districts whose costs are met by taxation determined and collected in the same manner and at the same time as other taxes of the city are collected (*i.e.,* those enumerated in Article 52 of the Education Law). In other words, in cities with fiscally dependent school districts, an act of the city legislative body reducing the percentum of exemption would apply uniformly to all city costs to be raised by taxation, including city school district expenses. There is no logical basis or argument for excluding those fiscally independent school districts in the aforementioned counties from exercising this option. And, in fact, our records indicate that 39 school districts in Suffolk County, 20 school districts in Westchester County and 24 school districts in Nassau County have adopted resolutions reducing or eliminating the section 485-b exemption for their tax purposes.

"Accordingly, it is our opinion that school districts in Suffolk County, Westchester County and Nassau County may exercise the option in subdivision 7 of section 485-b of the Real Property Tax Law to reduce the percentum of the business investment exemption."

Similarly, in a 1981 opinion, the State Comptroller, relying on the afore-mentioned SBEA opinion, also concluded that school districts in Nassau County may exercise the option under section 485-b of the Real Property Tax Law to reduce the tax exemption percentage provided by that section (1981 Opns St Comp No. 81-342, pp 374-375). The opinion stated:

"We have received a request to review the conclusion reached in Opns St Comp, 1976, No. 76-1028, unreported, in light of the contrary opinion rendered by the Division of Equalization and Assessment (6 Op. Counsel SBEA No. 85, 1979). In Opn. No. 76-1028, *supra,* we concluded that a school district in Westchester County may not reduce the per centum of the business investment exemptions authorized by section 485-b of the Real Property Tax Law. Our opinion was based on the fact that, in our view, school districts in Westchester County did not perform the technical act of levying school taxes but rather, under the provisions of the Westchester County Administrative Code, the

actual levy was performed by the towns within which the school districts were located.

"In 6 Op. Counsel SBEA No. 85, *supra,* the Division of Equalization and Assessment expressed the view that fiscally independent school districts, including those in Nassau, Suffolk and Westchester counties, may exercise the option to reduce the percentage of exemptions authorized by section 485-b of the Real Property Tax Law. That opinion is based on a broader interpretation of the phrase 'tax levy' to include the entire process of preparing, filing and delivery of assessment rolls, adopting a budget, computing the amount to be raised by taxes, adopting and affirming the assessment rolls, apportioning the taxes, estimating the taxes and annexing the warrant authorizing collection of the tax. In addition, the Division of Equalization and Assessment examined the legislative history of the business investment exemptions and determined that the legislative intent had been to give *all* fiscally independent school districts the option to reduce the percentage of the business investment exemptions.

"The Office of State Comptroller has determined, as a matter of policy, to defer to the Division of Equalization and Assessment with respect to all matters involving the assessing of real property and granting of exemptions from real property taxes. In addition, upon reexamination, we feel that the position we took in Opn No. 76-1028, *supra,* placed an undue emphasis on technical form over substance. Accordingly, we hereby supersede Opn No. 76-1028, *supra,* and adopt the views expressed in 6 Op. Counsel SBEA No. 85.

"The present inquiry concerns the authority of a school district in Nassau County to reduce the percentage of the exemptions authorized by section 485-b of the Real Property Tax Law. In light of the views expressed in 6 Op. Counsel SBEA No. 85, it is our opinion that a school district in Nassau County may exercise the option to reduce the percentage of such exemptions."

Our conclusion finds further support in *Newsday, Inc. v Town of Huntington* (103 Misc 2d 406, affd 82 AD2d 245, affd 55 NY2d 272). In that case the Half Hollows School District, located in the Town of Huntington, passed a

resolution which purportedly reduced the percentage of the tax exemption provided in section 485-b of the Real Property Tax Law to zero. The resolution was passed in April, 1979 and within the same week Newsday received a certificate of occupancy from the Town of Huntington for a facility which had been under construction since 1977. At the time that the resolution was passed, Newsday's facility was more than 90% complete.

In May, 1979, Newsday applied for a real property tax exemption pursuant to section 485-b of the Real Property Tax Law. The Suffolk County Board of Assessment Review denied Newsday's application with respect to the school tax exemption, relying upon the school district's April, 1979 resolution. Newsday thereafter instituted an action in which it sought a judgment declaring that it was entitled to a partial tax exemption for school tax purposes under section 485-b. In addition to arguing that it had a vested right in the tax exemption at the time that the April, 1979 resolution was passed, Newsday argued that the Half Hollows School District did not "levy" taxes and thus could not avail itself of the option under subdivision 7 of section 485-b. Pursuant to the Suffolk County Tax Act (SCTA) the school districts in that county do not extend the school taxes against the property, and they do not annex the warrants for the collection of school taxes. The districts are only responsible for adopting their budgets, fixing the tax rate to be imposed, and determining the total amount of taxes to be raised (SCTA, § 8).

In *Newsday* (103 Misc 2d 406, 415, *supra*), Special Term concluded that Newsday's right to the exemption under section 485-b of the Real Property Tax Law had "matured" prior to the passage of the district's resolution, and was therefore not vulnerable to the local option withdrawal. As a postscript, Special Term also noted that it was not persuaded by the plaintiff's argument that the Half Hollows School District did not levy taxes, rendering it incapable of exercising the local option afforded by subdivision 7 of section 485-b (103 Misc 2d, at p 416). On appeal the same contention, that is, that the school district was not one which levies taxes, was raised, but the position was not accepted by either this court or the Court of Appeals. By

necessary implication, the courts held that the mere minis-
terial acts of extending the taxes and annexing the war-
rant for their collection did not constitute the "levy" of the
tax within the meaning of subdivision 7 of section 485-b of
the Real Property Tax Law.

In view of *Newsday, Inc. v Town of Huntington (supra)*,
the two afore-mentioned administrative opinions, and the
legislative history and purpose underlying section 485-b of
the Real Property Tax Law, we conclude that school dis-
tricts located in Nassau County do "levy" taxes for pur-
poses of that section. Thus, the petitioner school districts
were authorized to exercise the withdrawal option under
subdivision 7 of section 485-b and the Board was required
to comply with the districts' resolutions.

On this point we note that the argument of *amici curiae*
that subdivision 1 of section 1306 of the Real Property Tax
Law equates the term "levy" with the making out of the
tax roll and the annexation of the warrant for collection is
unconvincing. Subdivision 1 of section 1306 of the Real
Property Tax Law refers to four separate functions: the
voting of the tax, the levy of the tax, the making out of the
school tax rolls, and the annexation of the warrant. The
subdivision does not equate the term "levy" with the latter
two functions, but treats them as distinct steps in the tax
levying process.

■ We also note that the Board relies upon two cases
from this court, *Matter of Sperry Rand Corp. v Board of
Assessors* (Supreme Ct, Nassau County, July 28, 1980,
index No. 13757/72, affd 77 AD2d 822) and *Board of Educ.
v Town of Islip* (15 AD2d 789), which held that school
districts in Nassau and Suffolk Counties, respectively, did
not have standing to question whether property had been
properly or improperly exempted from taxation, because
those entities had no power or duty under the local admin-
istrative codes with respect to the assessment or collection
of taxes. These cases are distinguishable from the within
proceeding since neither case involved an interpretation of
section 485-b of the Real Property Tax Law. As stated
previously, section 485-b was clearly intended to provide
fiscally independent school districts, such as those located
in Nassau County, with the ability to exercise the with-

drawal option contained in subdivision 7 thereof. To hold otherwise would be in contravention of the legislative purpose and intent behind the provision in issue.

■ We also agree with Special Term's conclusion that this proceeding is not barred under the four-month Statute of Limitations of CPLR 217. In a case involving a proceeding by a taxpayer to compel the Nassau County Board of Assessors and the Village of Roslyn to revoke an exemption given to property which was not exclusively used for religious purposes, Special Term stated "the failure of the Village Board to perform a duty specifically enjoined by law prevents the Statute of Limitations from running against it * * * The duty to assess omitted property is a continuing duty, and the village has not complied with that duty" (*Matter of Winter v Board of Assessors*, 63 Misc 2d 451, 454). Similarly, in this proceeding, the duty of the Board to reduce or eliminate the business investment tax exemption of section 485-b of the Real Property Tax Law for those properties specified in the resolutions of the petitioning school districts is a continuing duty which prevented the Statute of Limitations from running.

■ On their cross appeal, petitioners maintain that Special Term erred in refusing to direct the Board to correct the tax assessment rolls for the relevant properties retroactive to 1977/1978. We do not agree. Although the resolutions giving rise to the instant proceeding were adopted in 1976 and 1977, this proceeding was not initiated until 1982 and even at this late date petitioners characterize the consequences that may flow from their request for relief as "purely speculative". Special Term, noting that petitioners did not request retroactive damages from the county or from the affected property owners who were granted tax exemptions, granted petitioners' relief only for school years subsequent to 1981/1982. We note that even on their cross appeal petitioners have failed to adequately explain this limited request for relief. Special Term's determination was proper and will not be disturbed on appeal.

BRACKEN, RUBIN and EIBER, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered April 18, 1983, affirmed, without costs or disbursements.