OPINION OF THE COURT
Victor I. Barron, J.
Defendants move for summary judgment dismissing the complaint.
*391 At some point in 1991 defendant Victor Reyes purchased a building located at 199 Ashland Place in Brooklyn, New York. The building was built in 1899 and while originally a one-family dwelling, it had been converted into a two-family dwelling at some point prior to its purchase by Victor Reyes. After purchasing the building, Victor Reyes renovated the building and converted it from a two-unit dwelling to a four-unit dwelling. At some point, title to the building was placed in the name of both defendants.
In December 1992, plaintiff Victoria Coria entered into a lease for one of the apartment units in the building. Her son, the infant plaintiff Marcos Morales, was born on March 25, 1995, and defendants knew he lived with plaintiff in the subject apartment after his birth. In December 1996, the infant plaintiff tested positive for elevated blood lead levels. As a result of the elevated blood levels, the New York City Department of Health inspected plaintiffs’ apartment, found unlawful lead paint levels in several areas of the apartment, and issued an order to abate the violations. Defendants subsequently abated the lead paint problems in the apartment. Plaintiffs bring the instant action claiming that the infant plaintiff suffered injuries as a result of exposure to lead-based paint while living at defendants’ building.
Plaintiffs premise defendants’ liability on their failure to comply with the lead paint abatement provision of Local Laws, 1982, No. 1 of the City of New York (former Local Law No. 1), as it existed in 1994 and 1995 (Administrative Code of City of NY former § 27-2013 [h]).[1] Under former Local Law No. 1, an owner of a multiple unit dwelling was responsible for removing or properly covering paint containing more than the designated amounts of lead in any unit in which a child under seven years old resides (Administrative Code former § 27-2013 [h] [1]). Former Local Law No. 1 contained a rebuttable presumption that any peeling paint in any unit within “any multiple dwelling erected prior to [I960]” in which a child under seven resided contained more than the designated levels of lead (Administrative Code former § 27-2013 [h] [2]). Finally, former Local Law No. 1 classified the existence of paint containing more than the designated levels of lead in multiple dwelling units in which a *392 child under seven resided as a hazardous condition requiring correction within 24 hours (Administrative Code former § 27-2013 [h] [3]).
While former Local Law No. 1 created a basis for landlord liability not recognized at common law, it did not eliminate the common-law requirements of notice and causation necessary to make out a cause of action relating to an injury caused by a defective condition on a parcel of property (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 646-649). In light of the special duties imposed upon landlords by former Local Law No. 1, however, a landlord could be charged with constructive notice of a hazardous condition where there was a lead hazard in an apartment (which can presumptively be shown by the existence of peeling paint in a building built before 1960) and the landlord had knowledge that a child under seven resided therein (id., at 648). While former Local Law No. 1 established that landlords have a duty to remedy dangerous lead conditions, the specific contours of that duty were dictated by regulations contained in the Rules of the City of New York (28 RCNY 11-04). A violation of those rules is only some evidence to be considered on the question of a defendant’s negligence and the adequacy of a landlord’s efforts to discharge its duty is governed by a standard of reasonableness (id., at 645).
As movants for summary judgment, defendants bear the initial burden of showing that the presumptions contained in former Local Law No. 1 do not apply to them (Herrera v Persaud, 276 AD2d 304). Initially, defendants assert that the presumptions contained in former Local Law No. 1 do not apply because" the premises, although a multiple dwelling at the time of plaintiffs’ residency there, was not a multiple dwelling prior to 1960, since it was not converted to a multiple dwelling until 1991. This proposition rests on defendants reading former Local Law No. 1 as only applying to multiple dwellings that were, in fact, multiple dwellings prior to 1960, regardless of when the structure was erected. As noted, the relevant portion of former Local Law No. 1 applies to “any multiple dwelling erected prior to [I960].”[2] (Administrative Code former § 27-2013 [h] [2].) While this language could be read to support *393 defendants’ position, it also could be read to cover a building built before 1960 which became a multiple dwelling after that date.
In construing this Administrative Code section, the court is mindful that its primary consideration is to give effect to the intent of the City Council (see, People v Manini, 79 NY2d 561, 570; Matter of Walker v Board of Assessors, 103 AD2d 580, 585, revd, on other grounds 66 NY2d 702). The court must examine this particular provision in the context of the entire Administrative Code section (see, Rankin v Shanker, 23 NY2d 111, 114), bearing in mind the purpose of the provision (see, People v Kellar, 218 AD2d 406, 410).
Former Local Law No. 1 was enacted in recognition of the serious health hazards posed to children by exposure to lead-based paint and imposed a duty on landlords to remedy hazardous lead paint conditions (see, Juarez v Wavecrest Mgt. Team, supra, 88 NY2d, at 641, 645). The presumption of hazardous conditions applies to buildings built before 1960 because the use of lead-based paint on interior surfaces was prohibited on January 1, 1960 (see, id., at 641). Given that the danger caused by lead-based paint could be present in any building built before 1960 (whether or not such a building was a multiple dwelling on January 1, 1960), this court sees no reason why the City Council would have intended to exclude a building from the presumption simply because it was converted to a multiple dwelling after that date. Further, the obvious purpose in applying the presumption solely to multiple dwellings was to burden only those landlords who are presumptively in the business of being landlords. A landlord’s presumptive status is not affected by the date when a “private dwelling” (Multiple Dwelling Law § 4 [6]) was converted into a multiple dwelling. Thus, while defendants’ reading of former Local Law No. 1 is plausible based on its plain language, when the section is read in the context of the entire Administrative Code section, it is clear that the City Council did not intend to exclude a pre-1960 building from coverage simply because it was converted from a private dwelling to a multiple dwelling after that date.[3]
While the court finds that former Local Law No. 1 is applicable herein, an issue of fact exists concerning whether there *394 was peeling paint in the apartment so as to give rise to the presumption. In this regard, the court notes the conflict between the deposition testimony of defendant Victor Reyes, who stated that he never observed any peeling paint in the subject apartment, and the deposition testimony of plaintiff Victoria Coria, who stated that she had complained to the superintendent and the landlord about peeling paint on the windows. The renovation of the apartment, done when defendants’ building was converted into a multiple dwelling, does not entitle defendants to judgment as a matter of law on the ground that they acted reasonably to remedy a hazardous lead condition. Indeed, it appears that the renovation project was undertaken to divide the premises into a four-unit dwelling and not for any lead abatement reasons.[4] In light of these factual issues, summary judgment is clearly inappropriate here (see, Alvarez v Prospect Hosp., 68 NY2d 320).
Accordingly, defendants’ motion for summary judgment is denied.

. In 1999, the lead paint provisions of former Local Law No. 1 were modified and placed in new sections, Administrative Code §§ 27-2056.1 through 27-2056.10.

. Former Local Law No. 1 does not define what constitutes a “multiple dwelling.” For the purposes of this decision, the court assumes, without deciding, that former Local Law No. 1 adopted the definition of a multiple dwelling contained in Multiple Dwelling Law § 4 (7), which defines a multiple dwelling as a premises leased to three or more families living independently of each other.

. In Juarez, the Court of Appeals did not address the question posed here because neither the age of the building nor its multiple dwelling status was at issue (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, supra). To the extent that any language in Juarez could be read to support defendants’ position, it is dicta, since a decision is only precedent “as to those questions *394 presented, considered and squarely decided” (People v Bourne, 139 AD2d 210, 216; see also, People v Machado, 90 NY2d 187, 193).

. The blueprints relating to the renovation do not contain any instruction relating to the replacement of the moldings, and the moldings were tested and found to contain high lead levels.